## Dukes, et al. *v.* Sanders

No. 41552          November 14, 1960          124 So. 2d 122

544

*Dent, Ward, Martin & Terry,* Vicksburg; *Luther D. Pittman,* Raleigh, for appellant, Kelly Hammond Dukes.

*Dent, Ward, Martin & Terry,* Vicksburg; *O. B. Triplett, Jr.,* Forest, for appellant, Woodrow Dukes.

*Brunini, Everett, Grantham & Quin,* Vicksburg, for appellee.

*Lipscomb & Barksdale,* Jackson; *Vollor & Thames,* Vicksburg, amicus curiae.

KYLE, J.

This case is before us on appeal by Kelly Hammond Dukes and Woodrow Dukes, defendants in the court below, from a judgment rendered by the Circuit Court of Warren County in favor of Mrs. Lena Sanders, plaintiff in the court below, for the sum of $37,500, as damages for personal injuries suffered by the plaintiff as a result of the collision between a 1955 Chevrolet automobile, which was being driven by Mrs. Jean Warren Simmons and in which the plaintiff was riding as a guest, and a 1957 Ford automobile which was owned and operated by Kelly Hammond Dukes at the time of the collision. The accident occurred on U. S. Highway No. 80 about four miles west of the Town of Brandon, in Rankin County, on April 17, 1958, about 9:30 P.M.

The declaration filed by the plaintiff charged that the Ford automobile, which was being driven by the defendant Kelly Hammond Dukes had been purchased by the defendant Woodrow Dukes, the father of Kelly Hammond Dukes, and placed in the hands of Kelly Hammond Dukes with full knowledge by Woodrow Dukes that his

son Kelly Hammond Dukes was a careless, irresponsible, unsafe and incompetent driver whose presence on the highway was dangerous to the public. It was also charged in the declaration that the defendant Kelly Hammond Dukes, at the time the accident occurred, was in the employment of his father, Woodrow Dukes, and in and about the business of the said Woodrow Dukes, using the automobile which had been placed in his possession for use in and about said business, and that the said Kelly Hammond Dukes was acting within the scope of such employment. The declaration further charged that Kelly Hammond Dukes was negligent in the operation of said automobile, in that he was driving the same at an excessive, reckless and unlawful rate of speed, and heedless of the traffic on said highway, without maintaining a proper lookout for other vehicles on the highway and that he negligently failed to have his automobile under proper control and drove the same in an irregular course across the center line of said highway partially into the traffic lane occupied by the Simmons automobile, which was proceeding in an opposite direction, and with gross negligence collided with the Simmons automobile in which the plaintiff was a passenger.

The declaration further alleged that Mrs. Jean Warren Simmons was also negligent in failing to keep a proper lookout and in failing to slow down her automobile and bring the same under proper control as the two vehicles approached each other; that she negligently drove her vehicle excessively close to and within six inches of the center line of said highway, when the said Kelly Hammond Dukes was approaching on and partly across the center line of said highway; and that the direct proximate cause of the collision was the above mentioned gross negligence of the said Kelly Hammond Dukes and the above mentioned contributory negligence of the said Mrs. Jean Warren Simmons. The declaration further charged that, as a direct proximate result of the gross negligence of Kelly Hammond Dukes, act-

ing in and about his employment, and the gross negligence of the defendant Woodrow Dukes, in furnishing said automobile to the said Kelly Hammond Dukes, and the contributing negligence of the said Mrs. Jean Warren Simmons, the plaintiff, was seriously, painfully, and permanently injured, and the said Mrs. Simmons was instantly killed in said accident.

After the filing of the defendants' answers, and after a jury had been empanelled to try the case on its merits, the defendants Kelly Hammond Dukes and Woodrow Dukes, with the permission of the court, withdrew their answers and filed a motion for a change of venue to Smith County, the county of their residence. The court overruled the motion for a change of venue; the defendants refiled their answers, and the hearing of testimony was begun.

In view of the nature of the points assigned and argued by the appellants as grounds for reversal of the judgment of the lower court, it is necessary that we give a brief summary of the testimony of the witnesses who were present at the scene of the accident or actually involved in the accident, and the evidence relating to the ownership of the Ford convertible automobile which was being driven by Kelly Hammond Dukes at the time of the accident.

The plaintiff, Mrs. Lena Sanders, testified that she lived in Vicksburg and worked at the Mercy Hospital as a PBX telephone operator; that she made a trip with Mrs. Jean Warren Simmons and her fourteen year old daughter, Sharron, to Brandon on April 17, 1958, in Mrs. Simmons' 1956 Chevrolet sedan, for the purpose of attending the high school graduation exercises at the Shady Grove school near Brandon, where Mrs. Simmons' nephew was to graduate; that the graduation exercises were concluded about 8:30 P.M., and after a few minutes visit in the home of Mrs. Simmons' mother and father, who lived in the Shady Grove Community, Mrs. Simmons and her two companions left to return to

their homes in Vicksburg. They drove back through Brandon and proceeded westwardly along Highway No. 80. Mrs. Simmons was driving the car and Mrs. Sanders was riding on the front seat with her. Sharron was riding on the back seat. The wreck occurred at a point three or four miles west of Brandon. The plaintiff testified that she saw the Dukes car approaching from the west at a rate of speed of 70 to 80 miles an hour, and the next thing she knew there was a crash. She stated that the Simmons car was on its right-hand side of the road, the north side of the road, close to the center line. The other car was on the left-hand side, the south side of the road. When the wreck occurred there was a terrific crash. The witness stated that she was unconscious for a few minutes, and when she came to, her head was bleeding and she was spitting her teeth out of her mouth. She saw that Mrs. Simmons was seriously injured. She placed her arm around Mrs. Simmons and tried to hold her head up until the ambulance got there; but Mrs. Simmons was dead when the ambulance arrived. The Simmons' car was sitting almost off of the highway, turned around in the opposite direction. She stated that when the ambulance arrived she was carried to the Baptist Hospital, where it was found that she had a head laceration which was sewed up with twelve stitches; four front teeth were broken off; her left hip was fractured and there was a laceration on her left knee. She remained in the hospital in Jackson about a week, and was then transferred to the Mercy Hospital in Vicksburg, where she remained under treatment for a period of four or five weeks. Her medical bills and hospital expenses amounted to approximately $2300.

Kelly Hammond Dukes was called to testify as an adverse witness by the plaintiff. Kelly stated that he was 23 years of age, that he lived in the home of his grandfather, Sam H. Dukes, at White Oak in Smith

County, and Woodrow Dukes was his father. Kelly stated that he made a trip to Jackson on April 17, 1958, with Mr. Daniel Harvey, the school superintendent at White Oak; that Mr. Harvey wanted to get some school supplies from the War Surplus Property Commission in Jackson for the White Oak School and requested him to make the trip with him; and that they made the trip in Kelly's 1957 Ford. automobile. They drove directly to the War Surplus Property Commission's office in Jackson. Mr. Harvey procured the supplies for the school and had them loaded into a truck; and Kelly and Mr. Harvey then drove to the Edsel place south of Jackson, an automobile agency which was operated by Kelly's uncle, John H. Dukes. Kelly stated that he left the Edsel place about 9:00 o'clock p.m., to drive back home. Mr. Harvey did not return to White Oak with him, but rode with John H. Dukes. Kelly stated that he was driving eastwardly on U. S. Highway No. 80 at a rate of speed of about 55 miles per hour when the wreck occurred. He saw the Simmons car approaching, although he did not know whose car it was. He was driving on his right side of the road, and he never did cross the center line. Kelly was asked how the collision occurred. He stated that the first thing he knew it was done. He was then asked, ''What side of the road were you on at that time?'' His answer was: ''Before the collision I was on the right side. When they hit, I don't know what happened.'' Kelly stated that he was ''knocked out'' when the wreck occurred, but he never drove off the shoulder of the highway. When the ambulance arrived he was taken to the Baptist Hospital in Jackson.

Kelly testified that his Ford automobile was a Fairlane red and white convertible, which he had purchased in February 1957, from the Dukes Ford Agency at Raleigh. He had paid $2700 or $2800 for the car. Kelly was questioned at length about the source of the funds

which he used to pay for the car. He stated that he had a little money with him the night he purchased the car, and gave the Ford agency a check for $1703 drawn on the Bank of Raleigh in payment of the balance of the purchase price of the car. He was asked where he got the money that he had on deposit for the payment of the check. He stated that his granddaddy had given him some money. He was asked when his granddaddy gave him the money, and his answer was that he did not know. He stated that his daddy, Woodrow Dukes, did not know anything about the matter. Kelly was pressed for a direct answer to the question, where did he get the rest of the money which he used to pay for the car? He said that he "had it over there at the house." He was then asked where he kept the money at the house. His answer was, "I don't know." He was asked whether he had any kind of a job. His answer was, "I had an odds and ends job * * * Well, I mowed the grass up there at the schoolhouse for the superintendent." Kelly did not remember whether he had ever been involved in an automobile accident prior to the accident of April 17, 1958, or not. He did not recall that he had had an accident on June 2, 1956, when the car which he was driving turned over. He was asked about an accident in which he was involved on May 12, 1957, when the right front tire of his car blew out. He stated that he did not remember anything about that. He could not remember that he had been charged with speeding and had paid a fine in the City of Jackson on February 16, 1956, or that he had pleaded guilty and had paid a fine for speeding in the City of Hattiesburg on May 14, 1957.

Ray Williams, a state highway patrolman, testified that he was notified of the accident about 9:30 P.M., and that he arrived at the scene of the accident about ten minutes later. He found the Chevrolet sedan sitting upright on the north side of the highway headed

southeastwardly. There was a lot of glass broken off the car. The Dukes car was approximately 250 feet east of the Simmons car. Kelly was unconscious. There were no skidmarks on the pavement, but at the edge of the pavement on the shoulder of the road there was a circling tire mark 58 feet long leading right to the point where the Ford car came to rest on the highway. The patrolman stated that he could not tell from what he saw whether the cars hit on the north side or the south side of the center line of the highway. There were no skidmarks to show where they hit. The road was straight over a mile in each direction from the point of the collision. The patrolman stated that Mrs. Sanders and Mrs. Simmons were in the Chevrolet when he arrived. The little girl was standing on the outside. Mrs. Simmons appeared to be dead. Mrs. Sanders was in a state of shock.

Three doctors testified concerning the nature and extent of the plaintiff's injuries and the treatment administered to her while she was in the hospital. The only other witnesses who were called to testify on behalf of the plaintiff were Woodrow Dukes, who was called to testify as an adverse witness, and L. W. Blackwell, president of the Bank of Raleigh, who testified concerning the bank account upon which the check for $1703 was drawn by Kelly on February 18, 1957, in payment of the balance of the purchase price of the 1957 Ford convertible.

Woodrow Dukes testified that he was engaged in the mercantile business at White Oak in Smith County, and that he owned a 1957 Fairlane Ford Sedan automobile, which he had purchased sometime after Kelly purchased his 1957 Ford convertible; that he knew that Kelly had bought the Ford convertible in February 1957, but he knew nothing about the matter until Kelly drove the car up to his store after he had purchased it. He stated that Kelly did not help him about his business at the

store, "not to amount to anything"; and that he did not know what Kelly was doing. He knew nothing about Kelly's bank account. Woodrow stated that he ran his own business in the name of S. W. Dukes until the year 1958, but he got behind in the payment of his sales tax about that time and changed the name of his business to that of K. H. Dukes. Kelly had no interest in the business, however; and the new name of the business was just a trade name. He stated that the name of the S. W. Dukes bank account was changed to the K. H. Dukes bank account on July 22, 1957. He stated that Kelly did not write any checks on that account, however; that he had given orders to the bank as to the persons who could write checks on the account.

At the conclusion of the evidence offered on behalf of the plaintiff the attorney for the defendant Robert J. Simmons, administrator, moved for a directed verdict in favor of said administrator. The motion was sustained, and the jury was instructed to return a verdict for the administrator. Similar motions were then made on behalf of each of the other defendants, Kelly Hammond Dukes and Woodrow Dukes, but the motions were overruled. A motion was then made on behalf of said defendants for a change of venue to Smith County, the county of their residence, and that motion was overruled.

Woodrow Dukes was then recalled as a witness to testify in his own behalf. He stated that Kelly had been driving an automobile for a period of several years prior to February 18, 1957, and that his general reputation in the community as a driver of an automobile was good. He knew of no accident or traffic violation that Kelly had been involved in prior to the accident complained of in this suit. He admitted that he had heard that Kelly had a blowout in one of the tires of an automobile which he was driving, but he did not remember what car Kelly was driving at that time. Several other wit-

nesses offered on behalf of the defendants testified that Kelly's general reputation as a driver of an automobile in Smith County prior to February 18, 1957, was good. Daniel Harvey corroborated Kelly's testimony concerning the trip which Harvey made with Kelly to Jackson on April 17, 1957, when Harvey obtained certain property from the War Surplus Property Commission for the White Oak school.

The first point assigned and argued by the appellant's attorneys as ground for reversal of the judgment against the appellant Kelly Hammond Dukes is that the trial court erred in granting a directed verdict in favor of the defendant, Robert J. Simmons, administrator of the Estate of Mrs. Jean Warren Simmons, deceased, which ruling of the court was prejudicial to the appellant. It is argued that the testimony of Kelly Hammond Dukes created an issue of fact as to the negligence of Mrs. Simmons, which the jury should have been permitted to decide, and that the granting of the peremptory instruction in favor of the administrator of her estate was equivalent to a charge to the jury that the trial judge did not consider the appellant's testimony worthy of belief and that it should be entirely disregarded. The appellant's attorneys also say that the giving of such instruction in a case of this kind has been condemned by this Court in Gulf & S. I. R. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168.

But we think the appellant Kelly Hammond Dukes cannot complain of the action of the trial court in granting the peremptory instruction in favor of the administrator of the estate of Mrs. Simmons. The facts in this case are entirely different from the facts shown by the record in the Carlson case. In that case, as stated by the Court in its opinion, the directed verdict "was in favor of one whose negligence proximately contributed to the injury as was overwhelmingly shown by the evidence." In this case there was no such overwhelming

showing of contributory negligence on the part of Mrs. Simmons. As we have seen above, Kelly Hammond Dukes was asked to state just how the collision occurred; and his answer was: "The first thing I knew it was done." He was then asked, "What side of the road were you on at that time?" And his answer was, "Before the collision I was on the right hand side, when they hit I don't know what happened." There is no evidence in the record to show that Mrs. Simmons was driving at an unlawful or excessive rate of speed. No witness testified that she crossed over the center line of the highway at the time of the collision. In view of the facts thus stated we think there was no error in the court's action in granting the peremptory instruction in favor of Mrs. Simmons' administrator; and if there was error it was not such error as the appellant can complain of. Junkins v. Brown (Miss. 1960), 117 So. 2d 712.

It is next argued on behalf of the appellant Kelly Hammond Dukes that the court erred in refusing to grant the appellants' request for a change of venue, when there was no longer a local defendant in the case. And the appellant's attorneys cite in support of that contention the cases of Howard v. Ware, 192 Miss. 36, 3 So. 2d 830, 140 A.L.R. 1284, and Long v. Patterson, 198 Miss. 554, 22 So. 2d 490.

But we think there was no error in the court's refusal to grant the appellants' motion for a change of venue after the court had directed a verdict in favor of Mrs. Simmons' administrator. It cannot be said in this case, as in Howard v. Ware, supra, that the appellee rested her case without attempting to prove liability on the part of the administrator's intestate, who was charged in the plaintiff's declaration with negligently failing to keep a proper lookout and with negligently driving her vehicle too close to the center line of the highway, "when Kelly Hammond Dukes was approaching on and partly across said center line." Neither can

it be said in this case, as in Long v. Patterson, supra, that, if the facts alleged in the plaintiff's declaration had been established as true, no cause of action would have been shown to exist against the resident defendant. This is one of those cases where the facts of liability vel non against the resident defendant were involved in a complicated set of circumstances from which, when fully developed, more than one reasonable conclusion might have been drawn by the jury, or "where because of nice distinctions to be applied as a matter of law," it could not be told in advance of a full development of the case whether the resident defendant would or would not be held liable by the court. Long v. Patterson, supra. The appellee was riding as a guest in the Simmons car and was chargeable with no negligence which contributed to the collision or the personal injuries complained of; and it cannot be said that the appellee joined the administrator of Mrs. Simmons' estate as a party defendant fraudulently knowing that no recovery against her could be had thereon.

We come now to the consideration of the assignments of error made on behalf of the appellant Woodrow Dukes.

Two points are assigned and argued by the appellants' attorneys as ground for reversal of the judgment against the appellant Woodrow Dukes: (1) That the court erred in refusing to grant the peremptory instruction requested by the appellant Woodrow Dukes for a directed verdict in his favor; and (2) that the court erred in overruling the motion of the appellant Woodrow Dukes for a judgment in his favor notwithstanding the verdict of the jury.

We think the court erred in refusing to grant the peremptory instruction requested by Woodrow Dukes for a directed verdict in his favor, and in overruling the motion of the said Woodrow Dukes for a judgment in his favor notwithstanding the verdict of the jury. There is no proof in the record to show that at the

time of the accident in this case Kelly Hammond Dukes was acting in and about the business of his father and in furtherance thereof, or that he was using the 1957 Ford convertible in or about the business of his father. We also think the plaintiff's evidence was wholly insufficient to show that the 1957 Ford convertible had been purchased by the defendant Woodrow Dukes or with money furnished by Woodrow Dukes, or that Woodrow Dukes owned any interest in the Ford convertible.

This Court has held in numerous cases that, when the owner of an automobile permits its use by a person known to the owner to be a reckless or incompetent driver, or where by the exercise of reasonable care the owner could or should have so known, the owner is liable for all such injuries as are the natural and probable consequences of the recklessness or incompetency of said driver while using the automobile so furnished. Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Richton Tire & Timber Co. v. Smith, 210 Miss. 148, 48 So. 2d 618; Petermann v. Gary, 210 Miss. 438, 49 So. 2d 828.

The plaintiff's attorneys in this case made diligent effort to show by their cross-examination of Kelly and his father as adverse witnesses and by the testimony of the bank officers that the 1957 Ford convertible was purchased by Woodrow Dukes, or was paid for by funds belonging to Woodrow Dukes or given to Kelly by his father. But neither Kelly nor his father would admit that Woodrow Dukes had any part in the purchase of the automobile; and the testimony of the bank officers and the examination of the bank records shed no light on that aspect of the case. The plaintiff's proof was insufficient to show that Woodrow Dukes supplied, either directly or through a third person, the 1957 Ford convertible for the use of Kelly, or that Woodrow Dukes furnished any of the money that Kelly used for the purchase of the automobile. Kelly was a man 22 years of age at the time he purchased the automobile. There

can be no presumption that his father furnished the money for the purchase of the automobile, and proof is lacking to show that his father did furnish the money. The plaintiff also failed to prove that Woodrow knew, or from facts known to him, should have known, that Kelly was a reckless or incompetent driver.

The peremptory instruction requested on behalf of the appellant Woodrow Dukes should have been granted; and for the court's error in refusing to grant that instruction and in overruling the motion of said Woodrow Dukes for judgment notwithstanding the verdict, the judgment as to the appellant Woodrow Dukes is reversed and judgment will be entered here in his favor. The judgment as to the appellant Kelly Hammond Dukes is affirmed.

Affirmed as to the appellant Kelly Hammond Dukes, reversed and judgment rendered as to the appellant Woodrow Dukes.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

McGehee, C. J.

In this Suggestion of Error we are requested to at least remand the case in order that the proof may be fully developed in regard to the automobile driven by Kelly Hammond Dukes having been included in a business insurance policy, along with other automobiles, belonging to appellant Woodrow Dukes. The trial court sustained objection to the introduction of the insurance policy and ruled that the testimony offered in regard to the automobile in question being included in the said policy was incompetent, irrelevant and immaterial. However, the Suggestion of Error is filed by the appellee, Mrs. Lena Sanders, in regard to, or decision on, the appeal taken by Kelly Hammond Dukes and Woodrow Dukes. The appellee did not file a cross assignment of

error, and we are not justified in considering any error in the exclusion of evidence offered by the appellee in view of the fact that the court's action in that behalf was not assigned. There is considerable force in the argument of the appellee that the automobile being driven by Kelly Hammond Dukes at the time of the collision was paid for with the funds of Woodrow Dukes, and was in fact his automobile, but we are still of the opinion that the proof was insufficient to establish these facts.

Suggestion of error overruled.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.