New Biloxi Hospital, Inc. *v.* Frazier, et al.

No. 42452 November 26, 1962 146 So. 2d 882

*Eaton, Cottrell, Galloway & Lang,* Gulfport, for appellant.

*Cumbest & Cumbest,* Pascagoula; *Young & Young,* Jackson, for appellees.

ETHRIDGE, J.

This action was brought in the Circuit Court of Jackson County by Allein Frazier, the widow, and the two minor children of Samuel V. Frazier, deceased, for his negligently caused death. The defendants were Dr. George F. Smith, a resident of Jackson County, and the New Biloxi Hospital, Inc. (called Hospital), a Mississippi corporation domiciled at Biloxi in Harrison County. The suit was based upon Smith's negligent treatment of

Frazier in the emergency ward of the Hospital; and upon the negligence of the Hospital's nurses and employees in attending and caring for Frazier after he was brought to the emergency room of the Hospital. Plaintiffs dismissed their claims as to Dr. Smith. The cause proceeded to trial against the Hospital, and it was followed by a verdict and judgment for plaintiffs of $10,000.

## I.

The Hospital contends the trial court erred in overruling its motion for a change of venue to Harrison County, after plaintiffs took a nonsuit as to Smith. Plaintiffs propounded interrogatories to the Hospital and Smith. They were answered by both defendants. Dr. Smith's answer admitted he was a resident citizen of Jackson County. Before that, the Hospital filed its application for a change of venue to Harrison County, averring that Smith was a resident citizen of Hinds County and not of Jackson County. Hospital's counsel was advised by plaintiffs' attorneys that Smith had not moved his family from Jackson to Hinds County. Hence the Hospital withdrew its previous motion for a change of venue, because Smith was still in the suit.

When the case was called, both sides announced ready, the jury was placed in the box and was accepted by plaintiffs. However, at that time plaintiffs' counsel dismissed their action, after settlement, against Dr. Smith, the resident defendant of Jackson County. After that occurred, the Hospital moved for a change of venue to Harrison County. That motion was overruled. The court stated the jury was placed in the box and accepted by plaintiffs, and it felt the case had proceeded "thus far", and the corporate defendant was not entitled "to such change of venue at this time".

There was no error in denial of the change of venue. Where there are two defendants, suit may be

brought in the county of the residence of either. Miss. Code 1942, Rec., Sec. 1433; Indianola Cotton Oil Co. v. Crowley, 121 Miss. 262, 83 So. 409 (1919). In 1940 the Legislature enacted present Code Sec. 1441, which provides that where an action is brought ''of which the court . . . has jurisdiction of the subject matter, but lacks venue jurisdiction,'' the suit shall not be dismissed because of improper venue, but may be transferred to the correct venue. Miss. Laws 1940, Ch. 233. This is a general statute applicable to all defendants (individual and corporate) in which a case is brought in the wrong venue. See Dunn, Venue in the Circuit Court, 29 Miss. L. J. 1 (1957); Dunn, Venue and Jurisdiction in the Circuit Court, 30 Miss. L. J. 352 (1959). However, a civil action may be commenced in the county of the residence of either defendant. Code Sec. 1433. And Sec. 1441 applies only where the trial court ''lacks venue jurisdiction''.

In the instant case, when the suit was brought, the Circuit Court of Jackson County had jurisdiction both of the subject matter and also venue jurisdiction. The action was filed in good faith against both Dr. Smith and the Hospital. The declaration contained substantial charges of negligence by Smith as well as by employees of the Hospital. Smith's answer admitted he was a resident of Jackson County. The Hospital's defense in this case was based in part on an assertion that, if there were negligence, it was that of Dr. Smith. This is reflected by one of the Hospital's instructions to the jury. In short, this action was begun in the Circuit Court of Jackson County in good faith and on substantial grounds against both Smith and the Hospital. There is no evidence of fraud or bad faith in the fixing of venue in Jackson County. The evidence reflects the contrary. Before impaneling of the jury, plaintiffs settled with the resident defendant, Smith, and took a voluntary nonsuit against him.

Under these circumstances, the question is whether the action may be maintained in Jackson County against the non-resident, defendant Hospital, despite a dismissal against the resident defendant, Smith. We think it can.

■ ■ Considering the Mississippi statutes and decisions as an entirety, the pertinent rule may be summarized in this way: Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists — the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; and there was a reasonable claim of liability asserted against the resident defendant. Read v. Renaud, 6 S. & M. 79, 14 Miss. 79 (1846); Howard v. Ware, 192 Miss. 36, 3 So. 2d 830 (1941); Dukes v. Sanders, 239 Miss. 543, 557-558, 124 So. 2d 122 (1960); Forman v. Miss. Publishers Corp., 195 Miss. 90, 14 So. 2d 344 (1943); 92 C. J. S., Venue, Sec. 96(b), pp. 800-801; 56 Am. Jur., Venue, Sec. 31; Anno., 93 A. L. R. 949, 952 (1934).

■ ■ The instant case falls squarely within the above principles. When the suit was commenced, the Circuit Court of Jackson County had jurisdiction of the subject matter and the venue was correct. Plaintiffs brought the action in good faith in the bona fide belief that they had a cause of action against Dr. Smith, there was no fraud, or frivolous joinder of the resident defendant, and plaintiffs asserted a reasonable claim of liability against him. Under these circumstances, a later settlement with Smith, the resident defendant, did not deprive that court of venue and jurisdiction of the action. Read v. Renaud, supra; Christian v. O'Neal, 46 Miss. 669 (1872).

## II.

On the issue of liability, the weight of the evidence supports the jury's verdict. Sam Frazier was a 42 year old Negro man, who had lost his left eye and his left arm, just below the elbow, during World War II. He and his wife had two young children.

On the night of April 29, 1960, sometime between 10 and 10:30 p. m., he was shot by Junior Wright with a shotgun, in the stump of his left arm. The blast made two large holes in the upper arm and tore away the brachial artery. Frazier lay in an alley until he was picked up by an ambulance shortly before 11 p. m. He bled considerably at the scene, and on the ambulance cot during the five minute trip to the New Biloxi Hospital, Inc. Ambulance attendants carried him into the emergency room, where one of the Hospital's nurses just looked at him and walked away. He was bleeding profusely at that time. There was blood all over the ambulance cot, and while waiting in the hospital, blood was streaming from his arm to the floor, forming a puddle with a diameter of 24-30 inches. After about twenty minutes, another Hospital nurse came, looked at Frazier and walked away.

Shortly after that, upon insistence by the ambulance attendants, he was placed on the table of the emergency room by the nurses and strapped down. During all of this time Frazier had been thrashing about and cursing in a nasty manner. The registered nurse in charge, Mrs. Perrein, an employee of the Hospital, looked Sam over, took his blood pressure and his pulse, and sttempted to call the doctor who was on first emergency call for the staff of the Hospital. There was no doctor in the Hospital on emergency call at all times. The first doctor on the list could not be reached; Dr. Smith was contacted, and arrived about thirty minutes after being called, apparently around 11:30 p. m. or shortly thereafter.

In the meantime Frazier's wife and several of his friends arrived. They noticed that he was still bleeding and struggling; his wound was unbandaged, and there was blood on him and the table. Before Smith's arrival, the nurse placed a towel around the wound, but made no attempt to stop any bleeding, although she knew that this was an important factor. Mrs. Perrein denied Frazier was bleeding, but the jury manifestly found otherwise. She had no other particular duties to perform. She did not advise Dr. Smith of the extent of Frazier's bleeding. Smith, after looking at the wound, and learning Frazier was a veteran, recommended that he be transferred to the Veterans' Administration Hospital for surgical procedures. Frazier and his wife, both of whom were most distraught, acquiesced in the transfer. Smith left the room to see about obtaining an ambulance, but there was considerable delay in getting one.

After Smith examined the patient, Mrs. Perrein wrapped another towel around the wound. Neither she nor the doctor made any effort to stop the bleeding in any way. She continued to come in and out of the emergency room on occasions, but simply looked at Frazier. He asked to see his little boy, and for water. His bleeding continued. Mrs. Perrein was aware of the symptoms of shock: low blood pressure, high pulse rate, sweating and cold, clammy skin. Dr. Smith said he was relying on her to observe the patient and advise him of any changes. However, she did nothing for him other than to observe him, except to take his blood pressure upon his first being placed on the table in the treatment room.

He continued sweating; his skin was cold, but his thrashing about began to diminish, and he asked again for water. Mrs. Perrein did not report any of these facts to Dr. Smith, who said that Frazier probably had started into shock before he left the Hospital. A blood pressure reading would have revealed that. Smith was rely-

ing on the nurses to advise him about the patient's condition. If the condition had changed, he would have held the patient and given him additional treatment.

At about 1 a. m., Frazier was placed in another ambulance for a ten minute ride to the VA Hospital. When he arrived, he was practically moribund and, although every type of emergency measure was taken, he was pronounced dead at 1:25 a. m. An autopsy revealed that the sole cause of death was hemorrhage with resultant shock.

The administrator of the Hospital stated that nurses on duty in the emergency room have instructions to administer such treatment and render such first aid as they can, until a doctor arrives. Frazier was admitted to the emergency room as a patient, and a record was made of his admission.

This summary of the evidence reflects that Frazier was permitted to bleed to death, in the emergency room of appellant's Hospital, through the concurrent negligence of the Hospital's nurses and that of the doctor. The jury was justified in finding that appellant's employees, its nurses, were negligent, and such negligence constituted a proximate contributing cause of Frazier's death in several respects:

Failure to make any inquiry of the ambulance attendants concerning how long Frazier had been wounded, and how much he had bled; permitting Frazier to bleed unattended on the ambulance cot for an excessive length of time, before even placing him on the emergency room table and examining his wound; failing to take even reasonably simple precautions to diminish or stop the bleeding which was going on, after being placed on the emergency room table; failure of the nurses to advise Dr. Smith, upon his arrival, of the knowledge they had or should have had concerning the amount of bleeding while in the hospital; failing to properly bandage or take other means to stop or reduce the bleeding, after

Smith had looked at the wound for a brief time and left the emergency room; and failing to keep a close observation of the patient while waiting for the ambulance to transfer him to the VA Hospital, and to check again his blood pressure and pulse rate.

During this entire period the bleeding continued, and symptoms of shock began to appear, but the Hospital's nurses noticed none of these things. Dr. Smith said he was relying on them to advise him of any changes. They were obviously occurring, and would have been known to the nurses had they carefully observed the patient. The doctor said Frazier probably had gone into shock before leaving appellant's Hospital, and a pulse and blood pressure reading would have indicated this.

### III.

 A nurse on a hospital staff is considered as an employee, and the hospital is liable to a patient who suffers injury through her negligence while acting within the scope of her employment. 41 C. J. S., Hospitals, Sec. 8; 26 Am. Jur., Hospitals and Asylums, Sec. 14.

 The degree of care exacted of a hospital toward its patients is such reasonable care and attention for their safety as their mental and physical condition, if known, may require. It should be in proportion to the physical or mental ailments of the patient rendering him unable to look after his own safety. A hospital is not an insurer, but it is liable where it is chargeable with negligence which constitutes a contributing, proximate cause of the patient's injuries or death. 26 Am. Jur., Hospitals and Asylums, Sec. 14. Accordingly, a hospital must exercise such reasonable care toward a patient as his known condition may require. It is liable for want of ordinary care, whether from the incompetency of a nurse, or, as here, failure in duty by a fully qualified nurse. 41 C. J. S., Hospitals, Sec. 8(3) ; see Louisell and Williams, Trial of Medical Malpractice

Cases (1960), Sec. 16.07. These principles are well established in Mississippi. Richardson v. Dumas, 106 Miss. 664, 64 So. 459 (1914); Meridian Sanatorium v. Scruggs, 121 Miss. 330, 83 So. 532 (1920); Maxie v. Laurel General Hospital, 130 Miss. 246, 93 So. 817 (1922); Prewett v. Philpot, 142 Miss. 704, 107 So. 880 (1926); Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. 2d 582 (1949); Miss. Baptist Hospital v. Holmes, 214 Miss. 906, 55 So. 2d 142 (1941).

■■■ In an emergency, the victim should be permitted to leave the hospital only after he has been seen, examined and offered reasonable first aid. In undertaking to do so, a hospital must exercise due care. ■■ A hospital rendering emergency treatment is obligated to do that which is immediately and reasonably necessary for the preservation of the life, limb or health of the patient. It should not discharge a patient in a critical condition without furnishing or procuring suitable medical attention. Hayt, Groeschel and McMullan, Law of Hospital and Nurse (1958), pp. 59, 112-114.

■■ Moreover, a nurse may render necessary medical, first-aid care in an emergency. Whether an emergency in fact existed at the time will be determined in the light of all the circumstances. Here one assuredly was present. Hayt, et al., ibid., p. 191; State v. Brien, 102 Ohio App. 204, 139 N. E. 2d 640 (1957). First-aid treatment to relieve bleeding, shock, pain and other related conditions is warranted where necessary. Lesnik and Anderson, Nursing Practice and the Law (2d ed., 1955), pp. 287-290.

■■ There have been relatively few cases dealing with the liability of a hospital for negligence in connection with the care and treatment of a patient brought to an emergency room or ward. See Anno., Hospital's Liability as to Diagnosis and Care of Patients Brought to Emergency Ward, 72 A. L. R. 2d 396 (1960). In the instant case the Hospital undertook to render emergency

medical service to Frazier. He was recorded as an emergency room patient, and remained there two hours. Under such circumstances, the Hospital and its employees had a duty to use reasonable care in protecting his life and well being. Bourgeois v. Dade County, 99 So. 2d 575, 72 A. L. R. 2d 391 (Fla. 1956) ; Petry v. Nassau Hospital, 267 App. Div. 996, 48 N. Y. S. 2d 227, 268 App. Div. 780, 50 N. Y. S. 2d 173 (1944) ; Wilmington General Hospital v. Manlove, 174 A. 2d 135 (Del. 1961) ; O'Neill v. Montefiore Hospital, 11 A. D. 2d 132, 202 N. Y. S. 2d 436 (1960) ; cf. Birmingham Baptist Hospital v. Crews, 229 Ala. 398, 157 So. 224 (1934) ; Morand v. Seaside Memorial Hospital, 121 Cal. App. 2d 745, 264 P. 2d 96 (1953) ; Wade v. Ravenswood Hospital Assn., 3 Ill. App. 2d 102, 120 N. E. 2d 345 (1954) ; Leavy v. Yates, 142 N. Y. S. 2d 874 (1955).

It was not error to refuse appellant's instruction No. 5, since there was no evidence to support the assumption that the Hospital had not undertaken to render any service to the patient.

Affirmed.

*Lee, P. J., and Gillespie, Rodgers and Jones, JJ.,* concur.