RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:
¶ 1. B & B Management Company, LLC ("B & B") and Terence McGee ("McGee") appeal the circuit court's denial of their Motion to Dismiss and Transfer Venue. Finding that the trial court erred in denying the relief sought, we reverse the court's order and remand this case with instructions to dismiss Terence McGee and transfer venue to the Circuit Court of Madison County.
*479 FACTUAL AND PROCEDURAL HISTORY
¶ 2. Y.X. first filed a premises-liability case in Madison County against B & B and five John Does, alleging she was injured on a treadmill in the fitness room of an apartment complex located in Madison County. Prior to B & B making an appearance, Y.X. voluntarily dismissed that case and refiled essentially an identical case in Hinds County, adding McGee, a former employee of B & B and resident of Hinds County, as a defendant.[1]
¶ 3. There is no dispute that the alleged incident occurred on Saturday,[2] July 18, 2015. On that Saturday, a special event was held at the complex, where free back-to-school supplies and food were given away.
¶ 4. Within their answer, B & B and McGee included a Motion to Dismiss and Transfer, averring that McGee was "fraudulently joined ... in an attempt to fix venue in Hinds County, when the only proper venue for this matter is Madison County." B & B and McGee submitted that "[u]nder Mississippi law, there is no viable cause of action against [McGee]-the employee of a premises manager. [McGee] should be dismissed with prejudice, and this matter should be transferred to Madison County, Mississippi."
¶ 5. Later B & B and McGee renewed their pleas by filing a separate Motion to Dismiss and Transfer Venue, attaching affidavits of McGee and Brent Yurtkuran, a managing member of B & B. McGee swore that he was not responsible for creating or enforcing any safety procedures, placing or installing the equipment in the fitness room, inspecting or maintaining the exercise equipment or vending machines in the fitness room, or supervising or monitoring the equipment. McGee further swore that he was not working or present at the complex on July 18, 2015. Yurtkuran swore that McGee was not working on July 18, 2015, and corroborated McGee's testimony as to his lack of responsibility for the fitness room and equipment. B & B and McGee again averred no viable action existed against McGee and that McGee was added as a defendant for the sole purpose of attempting to fix venue in Hinds County.
¶ 6. Y.X. replied with affidavits. She and her mother swore that they previously had seen McGee in uniform working in and around the fitness room and that they believed McGee was responsible for supervising the fitness room, keeping the door to the fitness room locked, and cleaning the fitness room. Both swore that it was their understanding that the door to the fitness room was supposed to be unlocked during the day. Y.X. swore that, on the occasions when she previously had seen McGee working at the complex, she had never seen McGee doing anything in the fitness room other than cleaning or possibly checking something. Y.X. swore that she had seen McGee working at the property July 18, 2015.
¶ 7. Y.X. argued that she "had established a reasonable possibility of recovery against McGee, based on their [affidavit] testimony that McGee worked in, cleaned, and inspected the fitness room and locked *480 and unlocked the door to the fitness room in order to allow residents such as the Plaintiff to access the vending machine."
¶ 8. B & B and McGee replied that Y.X.'s and her mother's affidavits were insufficient to demonstrate a viable cause of action against McGee. B & B and McGee averred that any actions described by Y.X. related to McGee on that Saturday did not include acts of negligence for which he could be held independently liable, even if true. B & B and McGee reurged that McGee was not a manager or a "person in charge of the premises" and was not in charge of making or enforcing any apartment policies. McGee further testified that he was responsible only for emptying trash cans and changing filters in the fitness room. McGee maintained that he was not on the property that Saturday. B & B and McGee further argued that, even if one assumed McGee was at the complex on that Saturday, such a fact alone did not establish a viable cause of action. All parties agreed an event at which school supplies and food were given away took place at the complex on Saturday.
¶ 9. Yurtkuran submitted a second affidavit, stating that B & B had no policy requiring the door to the fitness room be locked at all times, nor was McGee responsible for keeping the fitness-room door locked. "Any negligence associated with the decision to unlock the fitness room door-which is denied-would have been negligence of the company, not its maintenance employee."
¶ 10. During the hearing on the Defendants' Motion to Dismiss and Transfer Venue, Y.X. moved, ore tenus, to expand the proceedings further by conducting limited discovery "on the issue of the viability of a claim for independent liability against Defendant Terrence McGee prior to the Court issuing [its] ruling on the Defendants' Motion to Dismiss and Transfer Venue...." The trial court granted Y.X.'s ore tenus motion, finding that limited discovery would aid in deciding the issues.
[T]he parties are permitted to engage in discovery strictly limited in scope to the specific issue of the viability of a claim of independent liability against Terence McGee. The discovery permitted shall be limited to requests for production and depositions of the Plaintiffs, the manager for Defendant B & B Management Group, LLC, B & B member Brent Yurtkuran, and Defendant Terence McGee....
The court authorized the parties to submit supplemental briefs "to apprise the Court of any new information gained during this limited phase of discovery relevant to the issues raised by the Defendants [in] their Motion to Dismiss and Transfer Venue...." The trial court ordered that discovery was to be completed by October 28, 2016. The trial court granted the parties an additional month to file supplemental briefs (by November 30, 2016). The order provided notice to all parties that the trial court would not rule on the "Motion to Dismiss and Transfer Venue until such time as the parties' time for submitting supplemental briefs as permitted herein has expired."
¶ 11. During discovery, Y.X. testified that she had seen McGee in street clothes on Saturday, July 18, 2016, "hanging out there, and I don't know what he was doing.... I just saw him pass by. I didn't really pay attention." She testified McGee was near the front of the complex and appeared to be leaving. She further testified that she and her friends "got something to eat first, and we were waiting for the supplies. That's why we went to the fitness room.... [W]e went there because we wanted to buy some drinks, but we ended up playing." The door to the fitness room was open, and other children were in *481 the fitness room but left when Y.X. and her friends entered. Y.X. also testified that she never saw McGee in the fitness room, opening the door to the fitness room, or locking or unlocking the door to the fitness room on Saturday, July 18, 2015. Y.X. also testified that her mother, He Shao, was at work at the time of the incident. Y.X.'s deposition testimony contradicted her affidavit in which she said she saw McGee working at the property on Saturday, July 18, 2016.
¶ 12. All parties filed supplemental briefs on November 30, 2016, as directed by the trial court's order. In support of their Motion to Dismiss and Transfer Venue, B & B and McGee averred that discovery had not revealed any facts to support an independent claim against McGee, or that McGee was a "person in charge" or a manager of the complex, such that he owed a legal duty separate from the premises-liability claim urged by Y.X. against B & B.
¶ 13. In her supplemental brief, Y.X. acknowledged that she had not seen McGee working that Saturday. She admitted that she neither saw McGee the day she claimed injury nor offered any independent evidence that McGee was in, near, or about the fitness room that day. Y.X. maintained that she had seen McGee that Saturday, but never in or at the fitness room that day.
¶ 14. Without addressing any facts or applicable law, the trial court denied Defendants' Motion to Dismiss and Transfer Venue:
Having reviewed the submissions of the parties, heard oral arguments and reviewed supplemental discovery, the Court is of the opinion that there are genuine issues regarding Terence McGee's liability, both individually and in the course of his employment which must be resolved by a jury, rather than by this Court, as a matter of law.
¶ 15. B & B and McGee filed a petition for interlocutory appeal. This Court granted the petition and stayed all trial-court proceedings pending the resolution of the appeal.
STATEMENT OF THE ISSUE
¶ 16. The issue as presented by B & B and McGee is stated verbatim et literatim :
Whether the trial court erred in denying defendants' motion to dismiss Terence McGee and transfer the case to Madison County where there is no reasonable claim of liability against McGee, and no other basis exists to establish venue in Hinds County.
Y.X. contends the issue is "[w]hether the trial court erred in denying Defendants' Motion to Dismiss Terence McGee and Transfer the Case to Madison County."
ANALYSIS
¶ 17. Two defendants seek relief. McGee was seeking dismissal, for no evidence was presented to support any individual liability claim against him. B & B was seeking a transfer of venue based on McGee being dismissed. B & B argued McGee was fraudulently joined to fix venue in Hinds County, depriving B & B of its right to be sued in a proper venue.
¶ 18. The separate issues require separate standards of review. For motions to dismiss, the standard is de novo. Park on Lakeland Drive, Inc. v. Spence , 941 So.2d 203, 207 (Miss. 2006). For a transfer of venue, it is abuse of discretion. See Stubbs v. Miss. Farm Bureau Cas. Ins. Co. , 825 So.2d 8, 12 (Miss. 2002) ; McCain Builders, Inc. v. Rescue Rooter, LLC , 797 So.2d 952, 954 (Miss. 2001). "The trial judge's ruling will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the *482 discretion has not been justly and properly exercised under the circumstances." Id. (citing McCain , 797 So.2d at 954 ). Our caselaw on motions to dismiss based on fraudulent joinder reveals that this trial court erred in failing to apply our body of law to the facts developed and presented. A detailed review of the record before us uncovers no evidence to support an independent claim of liability against McGee. The trial court further erred by denying B & B's motion to transfer venue. The trial court abused its discretion by not transferring the case to Madison County, the proper venue.
¶ 19. In this premises-liability[3] case, the trial court was tasked with determining whether Y.X. had a claim for liability based on a foundation of facts against B & B's former employee, McGee. Although a plaintiff may chose the forum when more than one may exist, the rights of defendants also are to be fairly respected.
The right of a citizen to be sued in the county of his residence is a valuable right; it is a right of importance to him-it is not a technical right. Where an action is brought in a county where any one of several defendants resides, the county must be one where a material defendant resides; he must be a proper party-he must not be joined for the sole purpose of giving the court of that county jurisdiction. If he is not a material defendant, and is joined as such by the plaintiff for the fraudulent purpose of giving the court jurisdiction, the cause will be dismissed or transferred to the proper county.... This is too valuable a right to permit the allegations of the plaintiff's declaration to be conclusive. Such a rule would furnish a convenient means for the plaintiff to fraudulently fix the venue of the action to suit his purposes.
Trolio v. Nichols , 160 Miss. 611, 133 So. 207, 208 (1931) (internal citations omitted). See also Jefferson v. Magee , 205 So.2d 281 (Miss. 1967).
¶ 20. In Jefferson , an automobile and a bus collided at a railroad crossing in Sunflower County. Jefferson , 205 So.2d at 281. The driver of the bus, McGee, filed suit[4] in Yazoo County against the driver of the automobile, Jefferson, a resident of Washington County, and the railroad company. Id. at 282. Prior to trial, Jefferson moved for transfer of venue. Id. Jefferson's motion to transfer set forth the following:
that he was a resident citizen of Washington County; that the accident occurred in Sunflower County; that the declaration stated no cause of action against the railroad company; that the allegations of the declaration pertaining to the railroad company were totally without foundation in fact; and finally, that the alleged cause of action against the railroad company was not asserted *483 in good faith, but solely for the purpose of fixing venue in Yazoo County unlawfully and in derogation of the rights of the movant to be afforded a trial in the county of his household and residence. In support of this motion Jefferson testified that he was familiar with the highway and its intersection by the railroad as he was reared in the town of Inverness which is about a mile and a half from this crossing; and that for the last eleven years he has traversed the railroad crossing on an average of four times a week in his business, even though he now lives in Washington County somewhat farther away. He testified that signs reading "Mississippi Law Stop" were maintained on each side of the railroad crossing. On cross-examination, however, he said that he had seen the sign so many times that he could not remember whether he saw it that particular night. However, his testimony is unequivocal and uncontradicted that he was thoroughly familiar with the highway and the crossing....
Id. at 282-83. During a hearing on the Motion to Transfer, Jefferson provided live testimony establishing additional foundational facts in support of his motion.
I knew where I was, and I knew where the railroad was.... I knew the railroad track was there. I knew the sign was there, but I didn't know the bus was there, or I would have stopped.... The bus stopped and I didn't.
Id. at 283.[5] A representative from the railroad company also testified at the hearing on the Motion to Transfer that all signs were properly in place. Id. The trial court denied the motion. Id.
¶ 21. The trial resulted in a verdict for the driver of the bus in the amount of $85,000, which was reduced by remittitur to $60,000. Id. On appeal, the driver of the bus argued the remittitur was improper, and the driver of the automobile argued the trial court erred in denying his motion to transfer venue. Id.
¶ 22. This Court found that the plaintiff "offered no evidence in rebuttal of the movant's testimony." Id. at 283.
We assume good faith on the part of the drawers of the declaration and further assume verity of the allegations against the railroad company, which allegations, if unchallenged, would at that time have stated a cause of action. However, the verity of the allegations, aside from the good faith of the attorneys, was put in issue by the defendant's motion for a change of venue. On the hearing of the motion the burden was upon the movant to [negate] the allegations by establishing facts contrary to or in explanation of them. The determination to be made is an evaluation of the facts.... The question thus arises as to whether the evidence of the movant was sufficient to negate the allegations of the declaration against the railroad company. The evidence of the movant, part of which is above enumerated, and all of which is totally uncontradicted, is that the warning sign required by law to be maintained by the railroad company was properly located both as to height above ground and distance from the crossing, and that its lettering was clearly visible. In view of this evidence we are of the opinion that the movant completely nullified the allegations of the declaration relating to the railroad company.
Id. (internal citations omitted).
¶ 23. We conclude, after reviewing all of the matters presented to the trial court, *484 that B & B and McGee not only "completely nullified the allegations of the declaration relating to [McGee]," Jefferson , 205 So.2d at 283, but they also nullified the evidence Y.X. provided in support of allegations made against McGee. The evidence submitted by B & B and McGee, that McGee was not a "person in charge" or a manager of the complex who would owe a separate duty to Y.X., was wholly uncontradicted by Y.X. Considering all matters presented by Y.X., B & B and McGee nullified her allegations of any claim against McGee.
¶ 24. In Christian v. McDonald , 907 So.2d 286 (Miss. 2005), after sustaining injuries in a multiple-vehicle accident, a motorist, Timothy McDonald, filed suit against two other motorists, John Currie and Charles E. Magee, and the employer of Magee, Jewel Christian, in Smith County. Christian , 907 So.2d at 287. McDonald and Currie both were employees of the same company and both were residents of Smith County. Id. Christian was a resident of Pike County, and Magee was a resident of Walthall County, Mississippi. The accident occurred in Alabama. Id. Christian and Magee moved for a change of venue, alleging that McDonald had fraudulently joined Currie as a defendant to obtain venue in Smith County. Id. "In support of their allegation, Christian and Magee argue that McDonald's claims against Currie were subject to the exclusive remedy provision of the Mississippi Workers Compensation Law and, therefore, could not serve as a basis for a claim in circuit court." Id. The trial court denied the motion for change of venue, finding that liability could exist against Currie and, thus, he was not fraudulently joined. Id.
¶ 25. This Court determined that the facts established that McDonald was injured while both he and Currie were acting in the course and scope of their employment for the same employer. Id. at 288. This Court held that McDonald had failed to demonstrate that Currie was "a party against whom liability could exist." Id. at 289.
This argument offered by McDonald's counsel formed the entire basis for the trial court's denial of the motion to transfer venue. We have attempted to identify the portion of this argument which gave comfort to the trial court regarding the correctness of his ruling. Our labors have been in vain. Nothing said by McDonald's counsel even approaches a recognizable argument in favor of allowing a lawsuit to proceed in circuit court against Currie. Indeed, we are unable to find even a misleading argument. In short, McDonald's counsel presented nothing. Thus, the trial court relied on-and adopted-nothing.
Id. This Court further held that, "[b]ecause the undisputed facts and clear, unambiguous law prevent any recovery by McDonald against Currie as a defendant, we find that Currie was fraudulently joined for the purpose of setting venue in Smith County." Id. at 291. This Court reversed the trial court's order denying a transfer of venue and remanded the case to the trial court for transfer to a county of proper venue, i.e., either Pike or Walthall County. Id. at 292.
¶ 26. Today's case is no different. The undisputed facts and unambiguous law prevent recovery by Y.X. against McGee. No evidence was adduced that McGee owed any individual duties to Y.X. As in Christian , Y.X. presented nothing to establish any claim against McGee. "In short, [Y.X.'s] counsel presented nothing. Thus, the trial court relied on-and adopted-nothing." See Christian , 907 So.2d at 289.
¶ 27. Precedential value often is found in cases with similar facts and/or issues. But *485 seldom are such cases found to be nearly on all fours. Today's case is that unusual case. See Spence , 941 So.2d 203. Each came to this Court via an interlocutory appeal after the Circuit Court for the First Judicial District of Hinds County entered an order denying a motion to dismiss a resident, putative defendant and transfer venue as to the remaining defendant. The question presented in each case was whether the resident, putative defendant was fraudulently joined for the sole purpose of establishing venue in Hinds County, Mississippi. The answer lies in whether the plaintiff asserted a reasonable claim of liability against that resident defendant.
¶ 28. In Spence , the plaintiff brought a personal injury action against a Rankin County ice skating park and three of its managers (Martha White, Jeffrey Wilburn, and Shane Douglas), seeking damages for injuries arising out of a collision with another skater during a public skating session. Spence , 941 So.2d at 204. The Park filed a motion to dismiss Douglas and to transfer venue, alleging that Douglas was fraudulently joined to fix venue in Hinds County. Id. at 205. In support of its motion, The Park provided the court with a sworn affidavit from White, the general manager, detailing the responsibilities of Douglas.[6] Id. Discovery ensued, and after its completion, The Park reurged its objection to venue. Id. at 205. The circuit court denied the motion to dismiss and transfer venue, and The Park sought interlocutory appeal. Id. at 205-06.
¶ 29. In Spence , The Park offered the same argument as B & B does today-"that Douglas is not a proper party to this lawsuit and that Spence named Douglas as a defendant solely for the purpose of establishing venue in Hinds County. Because The Park believes that Douglas was fraudulently joined, The Park requests this Court to transfer venue to Rankin County, which, according to The Park, is the only proper county for venue purposes." Id. at 206.
¶ 30. In our analysis of fraudulent joinder and venue, we cited Frazier :
Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists-[1] the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; [2] the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; and [3] there was a reasonable claim of liability asserted against the resident defendant.
Spence , 941 So.2d at 207 (quoting Frazier , 245 Miss. at 192, 146 So.2d at 884-85 (citations omitted) ). Additionally, in considering whether the joinder of the resident defendant was a result of fraud, the Court considered "whether the facts support inclusion *486 of the defendant upon whom venue is based." Spence , 941 So.2d at 207 (quoting Wayne Gen. Hosp. v. Hayes , 868 So.2d 997, 1002 (Miss. 2004) ; Estate of Jones v. Quinn , 716 So.2d 624, 628 (Miss. 1998) (citing Jefferson v. Magee , 205 So.2d at 283 ) ).
¶ 31. In Spence , the Court determined that Spence had failed to assert a reasonable claim of liability against Douglas. Id. The Court held that "Douglas should have been dismissed following The Park's submission of affidavits detailing the incident and the role, or non-role, that Douglas maintained in this incident. Spence never offered any evidence to support the inclusion of Douglas as a defendant." Id.
After being served with Spence's complaint, The Park filed a motion to transfer venue and to dismiss Douglas as a defendant in the lawsuit. In support of its motion, The Park appended an affidavit from its general manager, Martha White. In her affidavit, White states that Douglas was not present at the skating rink when the accident took place; that Douglas was not responsible for supervising public sessions; that Douglas's only connection with The Park related to private skating lessons; and, that Douglas had no duty to discourage high speed skating, or to hire floor guards or rink attendants, nor did Douglas decide the rules of the rink.
Spence was unable to sufficiently respond to The Park's motion and show that Douglas was in any way even remotely responsible for Spence's accident. Initially, Spence responded to The Park's motion by seeking discovery to compile factual support for Spence's allegation. The trial judge never ruled on The Park's motion; and therefore, discovery ensued. However, we find that even upon completion of discovery, there was nothing offered by Spence to assert a reasonable claim of liability against Douglas. Spence's main theory relies on Douglas's expertise in skating. Douglas cannot be responsible based solely on his knowledge of skating. In order to prevail against Douglas, Spence must show some duty on the part of Douglas, and that Douglas breached that duty. Stated differently, in order to recover against Douglas, Spence is required to prove the conventional tort elements of (1) duty, (2) breach of duty, (3) proximate causation, and (4) damages. City of Greenville v. Jones , 925 So.2d 106, 109 (Miss. 2006) ; Montgomery v. Woolbright , 904 So.2d 1027, 1029 (Miss. 2004). This, Spence has wholly failed to do. Additionally, to impose liability on Douglas anytime a "skating student" gets into an accident would be nonsensical, especially when the student is involved in recreational skating during a public session.
Spence , 941 So.2d at 208.
¶ 32. Today's case requires the same disposition. B & B submitted sworn affidavits that McGee was merely a maintenance man, with no managerial or supervisory duties. He emptied the trash, changed light bulbs, and serviced the HVAC system in the fitness room. No evidence has been presented that McGee was responsible for monitoring residents' use of the fitness room or enforcing fitness-room rules. Although Y.X. and her mother initially provided affidavits swearing that they each had seen McGee working at the property that Saturday, Y.X. testified she only saw McGee, sans uniform, leaving the complex. Moreover, Y.X. testified that her mother was at work that Saturday. In her deposition and affidavit, Y.X. never made any claim of seeing McGee working in or about the fitness room. Their affidavits were not only conclusory and contradictory, but the facts were wholly insufficient to support a premises-liability claim against McGee. Y.X. failed to establish facts upon *487 which any duty arose, and furthermore that McGee had breached any duty. Y.X.'s contention that she provided sufficient evidence of a legitimate claim of an independent act of liability against McGee is without merit.
¶ 33. We recognize that, New Biloxi Hospital, Inc. v. Frazier , 245 Miss. 185, 146 So.2d 882 (1962), cited in Spence , is distinguishable factually from Spence and today's case, for it was not a fraudulent joinder case. Nonetheless, it announced the principles to be applied once a resident defendant is no longer a party to the case. A wrongful-death suit was brought in Jackson County against a doctor, who was a resident of Jackson County, and a hospital, domiciled in Harrison County. Id. at 189, 883, 146 So.2d at 884-85. After the jury was selected, plaintiffs settled with the doctor and dismissed their claims against him. Id. at 190, 884, 146 So.2d at 884-85. The trial court denied the defendant's motion to transfer venue, and this Court affirmed. Id. The Court held that the "action was begun in the Circuit Court of Jackson County in good faith and on substantial grounds against both [the doctor] and the Hospital. There is no evidence of fraud or bad faith in the fixing of venue in Jackson County. The evidence reflects the contrary. Before impaneling of the jury, plaintiffs settled with the resident defendant, Smith, and took a voluntary nonsuit against him." Id. at 191, 884, 146 So.2d at 884-85.
¶ 34. This Court set forth the rule for determining if an action may be maintained against a nonresident, once the resident defendant had been dismissed.
Considering the Mississippi statutes and decisions as an entirety, the pertinent rule may be summarized in this way: Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists-the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; and there was a reasonable claim of liability asserted against the resident defendant.
Id. at 192, 884-85, 146 So.2d at 884-85 (citing Read v. Renaud , 6 Smedes & M. 79, 14 Miss. 79 (1846) ; Howard v. Ware , 192 Miss. 36, 3 So.2d 830, 140 A.L.R. 1284 (1941) ; Dukes v. Sanders , 239 Miss. 543, 557-558, 124 So.2d 122, 239 Miss. 543, 125 So. 2d 294 (1960) ; Forman v. Mississippi Publishers Corp. , 195 Miss. 90, 14 So.2d 344, 148 A.L.R. 469 (1943) ; 92 C.J.S. Venue § 96b, pp. 800-801; 56 Am. Jur. Venue § 31 ; Annotated, 93 A.L.R. 949, 952 (1934) (emphasis added) ).
¶ 35. Following this set of principles, the Court held that the facts of Frazier supported venue being proper in Jackson County.
Plaintiffs brought the action in good faith in the bona fide belief that they had a cause of action against Dr. Smith, there was no fraud, or frivolous joinder of the resident defendant , and plaintiffs asserted a reasonable claim of liability against him . Under these circumstances, a later settlement with Smith, the resident defendant, did not deprive that court of venue and jurisdiction of the action.
Id. at 192, 885, 146 So.2d at 884-85 (citing Read , 14 Miss. at 81-82 ; Christian v. O'Neal , 46 Miss. 669 (1872) (emphasis added) ).
¶ 36. This well-reasoned, well-researched, and well-written opinion is eminently *488 correct in its summary of Mississippi's principles, which are no less applicable today. That opinion encapsulated more than a century of caselaw, setting forth the principles involved in deciding whether a court should allow an action to be maintained against a nonresident defendant.
¶ 37. Accepting Y.X.'s testimony that she saw McGee leaving the complex, despite McGee's denial of being there that Saturday, does not change the fact that no evidence was presented which established that McGee owed an individual, legal duty to Y.X., or that he personally breached any legal duty that day. See Spence , 941 So.2d at 207 (Miss. 2006). No actions imposing legal liability on McGee individually were developed during discovery.
¶ 38. Applying principles set forth in Spence and Frazier , we find that McGee was joined fraudulently and/or frivolously with the intention of depriving B & B of its right to be sued in Madison County and that no reasonable claim of liability was established against McGee. Thus, venue is improper in Hinds County.
CONCLUSION
¶ 39. As the law of this State is well-settled on Motions to Dismiss and Transfer Venue based on fraudulent or frivolous joinder, we hold that the trial judge erred in refusing to dismiss McGee and subsequently transfer venue to Madison County. We reverse the circuit court's order and remand this case to the Circuit Court for the First Judicial District of Hinds County with instructions to dismiss Terence McGee and transfer venue to the Circuit Court of Madison County.
¶ 40. REVERSED AND REMANDED.
KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND CHAMBERLIN, J. WALLER, C.J., NOT PARTICIPATING.

The Complaint specifically alleges that:
all of the aforesaid negligence of [McGee] is directly imputed to the Defendant, B & B Management, because [McGee] was then, and at all times complained of, the agent, employee and servant of B & B Management and was acting in the furtherance of the business of B & B Management and within the course and scope of his employment at the time of his negligent acts.

McGee and B & B's representative testified that McGee typically worked Mondays through Fridays.

In Mississippi, an owner, occupant, or person in charge of a premises owes to an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition or to warn the invitee of dangerous conditions, not readily apparent, which the owner or occupier knows of or should know of in the exercise of reasonable care.
Waller v. Dixieland Food Stores, Inc. , 492 So.2d 283, 285 (Miss. 1986).

The declaration was filed in Yazoo County, Mississippi, against [the automobile driver] and the Illinois Central Railroad Company. It charged [the automobile driver] with negligently driving his automobile into the rear of a Greyhound bus operated by the plaintiff. It alleges that the collision occurred on Highway 29 West in Sunflower County at a point where such highway was intersected by the railroad tracks of the defendant Illinois Central Railroad Company and at a time when the bus was stopped at this railroad crossing.
Jefferson , 205 So.2d at 282.

Unquestionably, Jefferson admitted liability. However, his argument was that the suit had been filed in an impermissible county.

The affidavit alleged various facts, such as: "Shane Douglas, although employed by The Park, was not working, was not scheduled to work, and was not present at The Park when the subject incident occurred on January 2, 2002." Douglas was a skate instructor at The Park, and his job was to schedule and administer private skating lessons upon request; Douglas did not manage The Park, did not hire skate attendants or participate in any staffing or employment decisions, and did not decide the rules of the rink that applied during public skating sessions; while Douglas, as a skate instructor, enforced the rules and supervised his skaters while he was on the ice giving lessons, Douglas was not scheduled to teach a skating lesson and was not on the premises at the time of Spence's alleged injury and, thus, Douglas could not have personally committed any act or omission that caused Spence to fall.
Spence , 941 So.2d at 205 n.4.