PIERCE, Justice,
 

 for the Court:
 

 ¶ 1. This is an interlocutory appeal from the denial of a motion to sever and transfer venue. Plaintiffs Hattie Douglas (“Douglas”), Kevin Hamlin, and the victim’s five siblings (collectively, “plaintiffs”) filed a complaint in the Circuit Court of Hinds County against Sunshine Medical Clinic; Dr. Vibha Vig, in her official and personal capacities; Lisa Hoehn, nurse practitioner, in her official and personal capacities (collectively “medical-negligence defendants”). The plaintiffs allege a medical-negligence and negligent-hiring cause of action against the Medical-Negligence Defendants concerning the treatment and care of their minor son and brother, Kad-darius Douglas (“Kaddarius”) received before he died. The plaintiffs, in the same complaint, also brought claims against the Mississippi Crime Laboratory; Mississippi State Medical Examiners; Dr. Steven Hayne, in his official and personal capacities; Expertox, Inc.; and MedScreens, Inc. (collectively “wrongful-incarceration
 
 *199
 
 defendants”) asserting that their acts and omissions in performing a post-mortem examination and toxicological tests on Kad-darius’s body, as well as in storing and handling blood and urine samples, caused the wrongful incarceration of Douglas for the murder of Kaddarius. All of the defendants moved to have the trial court sever the claims and to transfer the claims against the wrongful-incarceration defendants to Rankin County and to transfer the claims against the medical-negligence defendants to Madison County. The trial court denied the motion. All of the defendants now bring an interlocutory appeal to severe the two claims and transfer venue.
 

 STATEMENT OF THE FACTS
 

 ¶ 2. The following facts were alleged in the plaintiffs’ complaint.
 

 ¶ 3. In October 2005, Kaddarius, then four months old, was taken to Sunshine Medical Clinic with severe respiratory problems. Sunshine Medical Clinic is located in Canton, Mississippi. Kaddarius was treated by Lisa Hoehn, nurse practitioner. Hoehn took no x-rays, and her treatment notes do not mention any consideration and/or treatment of pneumonia and/or myocarditis. In December 2005, Kaddarius, then six months old, was again taken to Sunshine Medical Clinic with severe respiratory problems. He was again treated by Hoehn, who took no x-rays and did not record any consideration and/or treatment of pneumonia and/or myocardi-tis. In May 2006, Kaddarius was taken to Sunshine Medical Clinic for a third time for respiratory problems. This time, he was seen by Dr. Vibha Vig (“Dr.Vig”). Dr. Vig’s physical examination of Kaddari-us revealed that his nose, mouth, pharynx, and ears were abnormal. Despite this, Dr. Vig did not order x-rays, and her treatment notes did not mention any consideration or treatment for pneumonia and/or myocarditis. Kaddarius died on May 11, 2006.
 

 ¶4. Following Kaddarius’s death, Dr. Steven Hayne (“Dr.Hayne”) performed an autopsy in Rankin County on Kaddarius’s body to determine his cause of death. According to Dr. Hayne’s report, there was no sign of the presence of alcohol in Kad-darius’s body. On May 15, 2006, blood and urine samples were taken from his body and sent to MedScreens, Inc. Although there was a recommendation from Dr. Hayne to test Kaddarius’s vitreous fluid, there was never any indication that vitreous fluid was ever drawn from Kaddarius or submitted for testing. On May 16, 2006, MedScreens delivered all of Kaddari-us’s samples to Expertox, Inc. On May 17, 2006, a death certificate was issued, stating that the cause of death was “rollover death/compression of chest.” It was deemed to be an accidental death.
 

 ¶ 5. On May 24, 2006, Expertox, Inc., issued a report with a finding that Kaddar-ius’s blood-alcohol content was .02g%. Between May 31 and June 2, 2006, Expertox, Inc., performed additional tests on the specimens and reported a blood-alcohol content of .04g% and that the urine-alcohol content was 0.4g%.
 

 ¶ 6. On August 16, 2006, MedScreens sent a test request to STL laboratories in St. Louis, Missouri. STL concluded that the blood samples were insufficient, and that they had been contaminated. STL further concluded that the urine sample yielded a result of 0.4g% alcohol content, but that it also showed a presence of brompheniramine and pseudoephed-rine/ephedrine, which was consistent with Kaddarius having taken cold medicine. As a result of these tests, Douglas was arrest
 
 *200
 
 ed and charged with the murder of her son and incarcerated.
 

 ¶ 7. As a result of the incarceration, the Mississippi Department of Human Services removed Douglas’s five other children from her custody. On July 10, 2007, Dr. Leroy Riddick
 
 [1]
 
 ruled that Kaddarius’s cause of death was due to interstitial pneumonia and myocarditis. After she had been incarcerated for more than a year and a half, the murder charge against Douglas was
 
 nolle prossed
 
 on May 29, 2008. Douglas was then cleared of all wrongdoing in the death of her son.
 

 ¶ 8. The plaintiffs filed a complaint in the Circuit Court of Hinds County against the medical-negligence defendants and the wrongful-incarceration defendants. The plaintiffs alleged a medical-negligence and negligent-hiring cause of action against the medical negligence defendants concerning the treatment and care their minor son and brother, Kaddarius, received before he died. The plaintiffs, in the same complaint, also brought claims against the wrongful-incarceration defendants, asserting that their acts and omissions in performing a post-mortem examination and toxicological tests on Kaddarius’s body, as well as in storing and handling blood and urine samples, caused the wrongful incarceration of Douglas for the murder of Kad-darius. The defendants moved to have the trial court sever the claims and transfer the claims against the wrongful incarceration defendants to Rankin County and the claims against the medical negligence defendants to Madison County. The trial court denied the motion. All the defendants now bring an interlocutory appeal to sever the two claims and transfer venue.
 

 STATEMENT OF THE ISSUES
 

 I. Whether the trial court erred in denying the motion to sever the claims.
 

 II. Whether the trial court erred in denying the motion to transfer venue.
 

 ANALYSIS
 

 ¶ 9. In reviewing a motion regarding joinder and venue the proper standard of review is abuse of discretion.
 
 Wyeth Laboratories v. James,
 
 918 So.2d 1243, 1245 (Miss.2005) (citing
 
 Janssen Pharmaceutica, Inc. v. Armond,
 
 866 So.2d 1092, 1095 (Miss.2004)).
 

 I. Whether the trial court erred in denying the motion to sever the claims.
 

 ¶ 10. Under Rule 20(a) of the Mississippi Rules of Civil Procedure,
 

 [a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action.
 

 Miss. R. Civ. P. 20. “Both of these prongs must be established before joinder is proper.”
 
 Wyeth,
 
 918 So.2d at 1245.
 

 A. Whether the Same-Transaction-ar-Occurrence Prong is Satisfied.
 

 ¶ 11. Under the first prong of Rule 20(a), “before an alleged ‘occurrence’ will be sufficient to meet Rule 20(a)’s two factors, there must be a distinct litigable event linking the parties.”
 
 Hegwood v. Williamson,
 
 949 So.2d 728, 730 (Miss.2007)
 
 *201
 
 (quoting
 
 Wyeth-Ayerst Labs. v. Caldwell,
 
 905 So.2d 1205, 1207 (Miss.2005)). In determining if the distinct litigable event exists to link the parties, the court should consider:
 

 whether a finding of liability for one plaintiff essentially establishes a finding for all plaintiffs, indicating that proof common to all plaintiffs is significant. The appropriateness of joinder decreases as the need for additional proof increases. If plaintiffs allege a single, primary wrongful act, the proof will be common on all plaintiffs; however, separate proof will be required where there are several wrongful acts by several different actors. The need for separate proof is lessened only where the different wrongful acts are similar in type and character and occur close in time and/or place.
 

 Hegwood,
 
 949 So.2d at 730-31 (quoting
 
 Ill. Cent. R.R. v. Gregory,
 
 912 So.2d 829, 834-35 (Miss.2005)).
 

 ¶ 12. In
 
 Hegwood,
 
 Williamson and Hegwood were involved in a car accident, and both were insured by State Farm Insurance.
 
 Hegwood,
 
 949 So.2d at 730. Williamson filed two separate claims as a result of the car accident, one for property damage and medical payments under her policy with State Farm, and a third-party claim for bodily injury and medical expenses under Hegwood’s liability policy.
 
 Hegwood,
 
 949 So.2d at 730. Williamson then filed a breach-of-contract and bad-faith claim against State Farm as a result of the investigation by the company’s insurance adjusters. In
 
 Hegwood,
 
 this Court stated that “[t]he claims against Williamson and State Farm arise out of separate allegations of wrongdoing occurring at separate times. While it is true that the genesis of both claims arose out of the accident, the two claims involve different factual issues and different legal issues.”
 
 Hegwood,
 
 949 So.2d at 731. Further, “when determining if joinder is appropriate, it is important to consider whether the proof presented to the jury would be confusing due to the multiplicity of facts.
 
 Hegwood,
 
 949 So.2d at 731 (citing
 
 Caldwell,
 
 905 So.2d at 1209). The Court held that raising both claims in one trial would be improper.
 
 Hegwood,
 
 949 So.2d at 731.
 

 ¶ 13. In this case, no distinct litigable event links the claims against them medical-negligence defendants with the claims against the wrongful-incarceration defendants. Although the tragic death of Kad-darius is the nucleus of these claims, the claims involve different actors, different witnesses, different evidence, and different areas of the law. The medical-negligence and negligent-hiring claims require the plaintiffs to produce evidence that the medical-negligence defendants violated their duty of care in their treatment of Kaddarius and that they were negligent in the hiring of their medical staff. The evidence needed to prove these elements is in no way connected to the evidence the plaintiffs are required to show in order to prove their claims against the wrongful-incarceration defendants of negligence in the mishandling and testing of Kaddarius’s blood and urine samples. The proof that would be required to prove the various claims between the two different groups of defendants would only serve to confuse the jury. Further, a finding of liability against one defendant does not impute liability to all defendants, causing more confusion to the jury.
 

 B. Whether any question of law or fact common to all defendants will arise in the action.
 

 ¶ 14. In addition to meeting the first prong of Rule 20(a), there must be a common question of law or fact for joinder to be proper. Miss. R. Civ. P. 20. As dis
 
 *202
 
 cussed above, no common question of law or fact exists to satisfy this prong. The case involves two different claims against different actors that require different proof and discuss different areas of the law.
 

 ¶ 15. Based on
 
 Hegwood,
 
 it is clear that no distinct litigable event can link the claims of the two groups of defendants. Therefore, the first prong of Rule 20(a) is not met. In addition to the first prong not being met, the plaintiffs have failed to provide sufficient argument that a common question of law or fact justifies joinder. Therefore, joinder is improper, and the claims should be severed.
 

 II. Whether the trial court erred in denying the motion to transfer venue.
 

 A. Proper venue for the claims against the medical-negligence defendants
 

 ¶ 16. The determination for proper venue is governed by statute. Mississippi Code Section 11-11-8(3) states:
 

 Notwithstanding subsection (1) of this section, any action against a licensed physician, osteopath, dentist, nurse, nurse-practitioner, physician assistant, psychologist, pharmacist, podiatrist, optometrist, chiropractor, institution for the aged or infirm, hospital or licensed pharmacy, including any legal entity which may be liable for their acts or omissions, for malpractice, negligence, error, omission, mistake, breach of standard of care or the unauthorized rendering of professional services
 
 shall be brought only in the county in which the alleged act or omission occurred.
 

 Miss.Code Ann. § 11-11-3 (Rev.2004) (emphasis added). Kaddarius received his medical care from Dr. Vig and Hoehn at the Sunshine Medical Clinic located in Canton, Mississippi. The alleged negligence happened at that clinic. Therefore, under Section 11-11-3(3), venue for the claims against the medical-negligence defendants is proper in Madison County, Mississippi.
 

 B. Proper venue for claims against the urrongful-incarceration defendants
 

 ¶ 17. With regard to the claims against the wrongful-incarceration defendants, “[t]he Mississippi Tort Claims Act, Miss.Code Ann. §§ 11-46-1 to 11-46-23, controls the issue of proper venue in cases where a plaintiff files suit against the State or one of its subdivisions.”
 
 United States Fid. & Guar. Co. v. Moss,
 
 873 So.2d 76, 78 (Miss.2004). Section 11-46-13(2) determines where venue is proper, and it states in pertinent part:
 

 The venue for any suit filed under the provisions of this chapter against the state or its employees shall be in the county in which the act, omission or event on which the liability phase of the action is based, occurred or took place.
 
 The venue for all other suits filed under the provisions of this chapter shall be in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located. The venue specified in this subsection shall control in all actions filed against governmental entities, notwithstanding that other defendants which are not governmental entities may be joined in the suit, and notwithstanding the provisions of any other venue statute that otherwise would apply.
 

 Miss.Code Ann. § 11-46-13(2) (Rev.2002) (emphasis added). Section 11^16-l(j) defines “state” to mean “the State of Mississippi and any office, department, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes
 
 *203
 
 or to sue or be sued in its own name.” Miss.Code Ann. § ll-46-l(j) (Rev.2002).
 

 ¶ 18. The plaintiffs argue that venue is proper in Hinds County because the principal offices of the Mississippi Crime Laboratory and the Mississippi State Medical Examiners Office are located in Hinds County.
 
 [2]
 
 This argument, however, is not consistent with the statutes of the Mississippi Tort Claims Act. Under The Mississippi Tort Claims Act, the location of the principal offices is the proper venue for a case only when the governmental party involved is the governing body of the political subdivision. Miss.Code Ann. § 11 — 46-13(2) (Rev.2002). Section 11 — 46—l(i) defines “political subdivisions” to be
 

 any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to any county, municipality, school district, community hospital as defined in Section 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.
 

 Miss.Code Ann. § 11 — 46—l(i) (Rev.2002). The Mississippi Crime Laboratories and the Mississippi State Medical Examiners Office, along with Dr. Hayne, do not fit the definition of “political subdivisions” set forth under this section.
 

 ¶ 19. In the instant case, Dr. Hayne was an employee of the State of Mississippi at the time of the autopsy, and the Mississippi State Medical Examiners Office and the Mississippi Crime Laboratory are part of state government under Sections 11 — 46—1(f) and (j).
 
 See
 
 Miss.Code Ann. § 11 — 46—1(f) and (j) (Rev.2002). Further, under Section 11-46-13(2), in actions brought against the State and its employees, venue is proper in the county “in which the act, omission, or event on which the liability phase of the action is based, occurred or took place.” Miss.Code Ann. § 11-46-13(2) (Rev.2002). In his affidavit, Dr. Hayne testified that he performed the autopsy and gathered the blood and urine samples at the Rankin County Morgue in Pearl, Mississippi. He also testified that “there were no aspects of the post mortem examination of Kaddarius Douglas performed in Hinds County, Mississippi. Kaddarius Douglas’ blood and urine specimens were not obtained in Hinds County, nor were they stored or analyzed in Hinds County, Mississippi.”
 

 ¶ 20. Therefore, venue is proper in the county where the act or omission occurred, Rankin County.
 

 CONCLUSION
 

 ¶ 21. The trial court erred in not severing and transferring the claims to their proper venues. Therefore, the medical-negligence and negligent-hiring claims against the medical-negligence defendants shall be severed and moved to Madison County Circuit Court. The wrongful-incarceration claims against the wrongful-incarceration defendants shall be severed and moved to Rankin County Circuit Court. We reverse the judgment of Hinds County Circuit Court and remand the case
 
 *204
 
 for severance and transfer, consistent with this opinion.
 

 ¶ 22. REVERSED AND REMANDED.
 

 WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ„ CONCUR.
 

 [1]
 

 . Although not included in the complaint, Dr. Riddick is a pathologist from the University of South Alabama in Mobile, Alabama.
 
 See
 
 http://www.southalabama.edu/usahealth system/pressreleases/2006pr/060906b.html (last visited September 21, 2011).
 

 [2]
 

 . In their brief, the plaintiffs take a different approach on appeal, raising issues regarding whether the Mississippi Crime Laboratory and Mississippi State Medical Office failed to perform certain duties (e.g., negligently failing to utilize proper testing procedures and negligently training employees), which led to Douglas’s wrongful incarceration. These issues are new, and will not be considered on appeal.
 
 See Bush v. State,
 
 895 So.2d 836, 842 (Miss.2005).