# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-IA-00354-SCT

*ALPHA MANAGEMENT CORPORATION*

*v.*

*BETTY HARRIS, INDIVIDUALLY, AND BETTY*
*HARRIS ON BEHALF OF ALL THE WRONGFUL*
*DEATH BENEFICIARIES OF JOHN HARRIS,*
*DECEASED, AND KEVIN GOODEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/2022 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | JOE N. TATUM |
| | SAMUEL JOHN NICHOLAS, JR. |
| | STEPHEN GILES PERESICH |
| | COWLES EDGAR SYMMES |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN GILES PERESICH |
| | COWLES EDGAR SYMMES |
| ATTORNEY FOR APPELLEES: | JOE N. TATUM |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 06/01/2023 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-IA-00355-SCT

*COMMUNITY PARK APARTMENTS, INC., AND*
*ALPHA MANAGEMENT CORPORATION*

*v.*

*BETTY HARRIS, INDIVIDUALLY, AND BETTY*
*HARRIS ON BEHALF OF ALL THE WRONGFUL*
*DEATH BENEFICIARIES OF JOHN HARRIS,*
*DECEASED, AND KEVIN GOODEN*

DATE OF JUDGMENT:              3/29/2022
TRIAL JUDGE:                   ADRIENNE ANNETT HOOPER-WOOTEN
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      STEPHEN GILES PERESICH
                               COWLES EDGAR SYMMES
                               LANNY R. PACE
                               JAMES SETH McCOY
ATTORNEY FOR APPELLEES:        JOE N. TATUM
NATURE OF THE CASE:            CIVIL - WRONGFUL DEATH
DISPOSITION:                   REVERSED AND REMANDED - 06/01/2023
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     The controlling issue in this interlocutory appeal is fraudulent joinder—did the plaintiffs join a defendant for the sole purpose of establishing venue in Hinds County?

¶2.     The plaintiffs are the wrongful-death beneficiaries of a man killed in an apartment fire and two other people injured in the same fire. The fire occurred at an apartment complex in Pike County. The plaintiffs sued the apartment complex's management company, Alpha Management Corporation, which has its principal place of business in Madison County. And they also named as a defendant the purported property owner, Community Park Apartments, Inc. (CPA). At the time the complaint was filed, the Mississippi Secretary of State's website listed CPA as having its principal office in Hinds County.[1] So the plaintiffs filed suit in Hinds County.

---

[1] *But see* **Weeks, Inc. v. Lewis**, 335 So. 3d 1049, 1054 (Miss. 2022) (holding that, for venue purposes, the address provided to the Secretary of State as a business's principal office may be relevant but is not conclusive as to where a corporation's principal place of business is located).

¶3.     Alpha Management responded immediately.  It asserted that CPA *did not own* the apartments.  And because CPA was not a proper defendant, Alpha Management moved that venue be transferred from Hinds County to Pike County or Madison County.  As support for its motion, Alpha Management attached a certified copy of a warranty deed showing CPA sold the apartment complex almost fifty years ago in 1975.  CPA similarly filed a motion to dismiss, attaching a copy of the same warranty deed showing it had sold the apartments in 1975 and then ceased to operate as a nonprofit corporation.

¶4.     Still, the Hinds County Circuit Court denied both motions.  In the trial judge's view, the warranty deed was not sufficient proof that CPA had in fact sold the property a half-century ago.  The entity to which CPA sold the apartment complex had a similar name, Community Park Associates, Ltd., and only the grantor—but not the grantee—had signed the warranty deed.  So the trial judge found it was "difficult to believe that the warranty deed shows that this was not a straw man's action" in which CPA sold the apartment complex to itself.

¶5.     We reverse the trial court's ruling and remand with instructions to dismiss CPA as a defendant and transfer the case to either Madison County or Pike County.  Mississippi has never required a deed be signed by the grantee to be valid.  And no evidence supports the trial judge's conjecture that the transaction was somehow fraudulent or anything other than what the deed showed it to be—the transfer of the property from one distinct corporation to another distinct partnership.  Because CPA indisputably sold the apartment complex in 1975, the beneficiaries' allegation that CPA owned the apartment building at the time of the fire

3

is demonstrably false. So the plaintiffs cannot recover from CPA on their theory of premises liability. Therefore, CPA is not a material and proper party and cannot be joined to establish venue in Hinds County.[2]

## Background Facts and Procedural History

### I. Complaint

¶6. At this early stage of litigation, the underlying facts have not been fully developed. But we know from the complaint that there was a fire in an apartment complex called Community Park Apartments in McComb, Mississippi. John Harris died, and Betty Harris and Kevin Gooden were injured. Betty Harris—individually and on behalf of John Harris's wrongful-death beneficiaries—and Gooden (collectively, Harris) filed a complaint in Hinds County Circuit Court, First Judicial District, against Community Park Apartments, Inc. (CPA), and Alpha Management Corporation. At the time the complaint was filed, the Mississippi Secretary of State's website listed CPA as having its principal office in Hinds County. Alpha Management undisputedly has its principal place of business in Madison County.

¶7. The complaint alleged that CPA and Alpha Management "owned, operated, and managed" Community Park Apartments. Further, Harris alleged, "as owners, operators and managers of the subject premises," CPA and Alpha Management "failed to fulfill their duties to make the premises reasonably safe and secure and to take reasonable measures to protect tenants from foreseeable harm and danger from fire . . . ."

---

[2] ***Stubbs v. Miss. Farm Bureau Cas. Ins. Co.***, 825 So. 2d 8, 13 (Miss. 2002)

4

## II. Defendants' Responses

¶8. Alpha Management responded to the complaint with a motion to dismiss or, alternatively, transfer venue. Alpha Management asserted that venue was improper because the defendant that was sued to establish venue in Hinds County, CPA, had been fraudulently joined. Contrary to the allegation in the complaint, CPA did not own, operate, or manage Community Park Apartments. Instead, CPA sold the property in 1975. As the only valid defendant, Alpha Management asserted venue was proper in Pike County, where the fire occurred, or Madison County, where Alpha Management's principal place of business is located, but not in Hinds County.[3] *See* Miss. Code Ann. § 11-11-3(1)(a)(i) (Rev. 2019).

¶9. The same day Alpha Management filed the motion to dismiss or transfer venue, Harris filed an application for entry of default against CPA, which had not yet responded to the complaint. The clerk quickly entered a default the next day. A month later, Harris moved for a default judgment against CPA. Alpha Management filed a response to this motion, asserting the venue and jurisdictional issues needed to be resolved before the trial court addressed Harris's motion.

¶10. CPA then filed an answer and motion to dismiss. In this brief filing, CPA asserted it had been a non-profit corporation that developed a low-income housing project called Community Park Apartments. In 1974, a tornado struck the complex. CPA claimed that the complex "was restored in accord with federal and local housing requirements." Then, in 1975, Community Park Apartments was sold to Community Park Associates, Ltd. And CPA,

---

[3] Alpha Management additionally claimed process and service of process were insufficient.

"the formerly established and recognized Mississippi non-profit corporation ceased to be."[4] Counsel for CPA explained that he had personally met with Harris's counsel about this fact around the close of the thirty-day window for CPA to file its answer. Harris's counsel said he would get back with CPA's counsel, but he never did.

### III.   Trial Court's Ruling

¶11.   The trial court held a hearing on CPA's motions to dismiss and Alpha Management's motion to dismiss or transfer venue. The day before the hearing, CPA filed a motion to set aside the entry of default. But the trial court did not hear arguments or rule on this motion. Instead, the focus was on whether CPA and/or Alpha Management should be dismissed and whether venue should be transferred to either Pike or Madison County.

¶12.   Alpha Management and CPA presented a certified copy of the 1975 warranty deed. According to the deed, "COMMUNITY PARK APARTMENTS, INC., a Mississippi corporation (herein called 'Grantor') does hereby sell, convey and warrant until C. PARK INC., a Mississippi corporation on behalf and as General Partner of COMMUNITY PARK ASSOCIATES, LTD., a Mississippi limited partnership (herein called 'Grantee')" the property known as Community Park Apartments. In response, Harris presented a print-out of Pike County's online tax rolls. This printout showed "Community Park Inc c/o Alpha Management Corp" owned the apartment complex.

¶13.   At the hearing, the trial judge expressed concern that only the representative of the grantor had signed the deed. In her view, "[i]t looks like that there was only one person

---

[4] CPA was not officially dissolved through the Mississippi Secretary of State's office until after Harris filed the complaint against it.

6

that—that this property was being transferred from the same person to the same person. That's what this deed looks like because there's only one signature on it."

¶14.   CPA's counsel—the very person who had signed the deed in 1975—explained that CPA, the grantor corporation, and Community Park Associates, the grantee partnership, were "totally separate and apart." He made clear that, "[a]lthough they may sound alike, . . . they are two separate entities." The trial judge rejected this explanation, reiterating that the deed had just one signature.

¶15.   The trial judge denied both CPA's motion to dismiss and Alpha Management's motion to transfer venue based on fraudulent joinder.[5]   In the written order, the trial judge determined "a fact issue" existed with the assertion that CPA sold the property in 1975 because the warranty deed "did not contain the signature of the grantee." Consequently, the trial judge found it "difficult to believe that the warranty deed shows that this was not a straw man's action" in which CPA was simply renamed. The judge then concluded, "[b]ecause of the Court's determination that CPA did not sell the property in 1975, [Harris] still ha[s] viable wrongful death claims against CPA."

¶16.   Both Alpha Management and CPA filed petitions for permission to file interlocutory appeals, which this Court granted.[6]   The two appeals have been consolidated.

---

[5] The judge also denied Alpha Management motion to dismiss for improper process and service of process.

[6] While both Alpha Management and CPA also assert issues with service of process in their briefs, in this interlocutory appeal, we focus on correcting the clear error of denying CPA's motion to dismiss and Alpha Management's motion to transfer venue based on fraudulent joinder.

7

**Discussion**

## I.      Fraudulent Joinder

¶17.    This Court has said that, "[i]n suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants." *Blackledge v. Scott*, 530 So. 2d 1363, 1365 (Miss. 1988). "This is true where the defendant upon whom venue is based is subsequently dismissed from the suit." *Id.* "In such situations, venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only." *Id.* (citing *Jefferson v. Magee*, 205 So. 2d 281 (Miss. 1967)).

¶18.    But this Court has also recognized the obvious potential for abuse of this rule—the naming of a defendant, not for purposes of establishing liability, but purely for the purpose of establishing venue. *Id.* Consequently, "[w]here multiple defendants are involved, the venue-fixing defendant must be a material and proper party and not a defendant 'joined for the sole purpose of giving the court of that county jurisdiction.'" *Stubbs*, 825 So. 2d at 13 (quoting *Trolio v. Nichols*, 160 Miss. 611, 133 So. 207, 208 (1931)). To prevent such fraudulent joinder,

> (1)     the [plaintiff's] action must be initiated in good faith in the bona fide belief that the plaintiff has a cause of action against the defendant upon whom venue is based;
>
> (2)     the claim against the defendant upon whom venue is based must be neither fraudulent nor frivolous nor made with the intention of depriving the other defendants of their right to be sued in their own counties; and
>
> (3)     there must be reasonable claim of liability asserted against the defendant upon whom venue is based.

8

***Blackledge***, 530 So. 2d at 1365 (citing ***New Biloxi Hosp., Inc. v. Frazier***, 245 Miss. 185, 146 So. 2d 882 (1962)).

¶19.    This fraudulent-joinder test was created before this Court's adoption of the Rules of Civil Procedure.  Still, in his separate opinion, Justice Griffis insists we must place a motion to dismiss based on fraudulent joinder into one of the neat categories of Rule 12 based on the particular label given by the movant.[7]  In Justice Griffis's view, Alpha Management has only brought a motion to transfer venue under Rule 12(b)(3).[8]  But that is not the case.

¶20.    Unlike in the recent venue-transfer case ***Weeks, Inc. v. Lewis***, 335 So. 3d 1049 (Miss. 2022), Alpha Management is not asserting venue must be transferred because neither defendant has its actual principal place of business in Hinds County.  Instead, Alpha Management has asserted that venue must be transferred because CPA is not a proper defendant against whom Harris has a reasonable claim.  Rather, CPA was solely named to deprive Alpha Management of being sued in its own county.  So the issue of whether Harris has a claim against CPA or whether CPA should be dismissed as a defendant is not off limits, as Justice Griffis suggests.  In fact, it is *the precise question* that must be addressed to resolve Alpha Management's motion to transfer venue based on fraudulent joinder.

¶21.    Only if the court deems Harris's complaint to have no claims against CPA—thereby warranting that defendant's dismissal—does Alpha Management succeed in its motion to transfer venue, something Justice Griffis curiously agrees should happen.

---

[7] *See* Miss. R. Civ. P. 12.

[8] Miss. R. Civ. P. 12(b)(3).

¶22. In reality, a motion to transfer venue based on fraudulent joinder is by its nature a hybrid motion—it is a motion to dismiss another defendant so that venue can be transferred to the moving defendant's home county.

¶23. So how should our courts address the dismissal element of Alpha Management's request? When facing analogous claims of improper joinder of in-state defendants to defeat removal by the diverse defendant to federal court, the Fifth Circuit has directed its trial courts to "employ a summary judgment-like procedure for disposing of these claims." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 230 (Miss. 2005) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). As the Fifth Circuit has explained:

> While we have frequently cautioned the district courts against [pre-trying] a case to determine removal jurisdiction, we have also endorsed a summary judgment-like procedure for disposing of fraudulent joinder claims. In *B., Inc. v. Miller Brewing Co.*, we carefully discussed the procedures for assessing fraudulent joinder claims and noted that "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment . . . ." 663 F.2d 545 (5th Cir. 1981). The *B., Inc.* court expressly authorized consideration of evidence outside of the pleadings: In support of their removal petition, the defendants may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint . . . In short, the Fifth Circuit treats fraudulent joinder claims as capable of summary determination.

*Id.* (quoting *Carriere*, 893 F.2d at 100). "The Fifth Circuit's analysis ultimately requires the district court to 'pierce the pleadings' and determine whether the non-removing party has any possible claim under applicable state law." *Id.* (citing *Carriere*, 893 F.2d at 100). We find the Fifth Circuit's limited-summary-judgment approach both sound and readily applicable to motions to transfer venue based on fraudulent joinder.

10

¶24. In fact, this is the very approach the trial judge used to resolve CPA's and Alpha Managment's motions. Here, the trial court pieced the pleadings to consider whether CPA had sold Community Park Apartments, thus precluding Harris's ability to recover from it. And the trial court determined CPA and Alpha Management had not undisputedly shown CPA sold the property in 1975. Instead, the judge concluded fact issues remained.

¶25. We review this ruling de novo, as we would a summary-judgment ruling, viewing the evidence in the light most favorable to the plaintiffs, the nonmovants. *Cf. Hyde v. Martin*, 264 So. 3d 730, 734 (Miss. 2019). And only if "the undisputed facts and clear, unambiguous law prevent recovery" against CPA should this Court find CPA "was fraudulently joined for purpose of setting venue in [Hinds] County." *B & B Mgmt. Co., LLC, v. Y.X. ex rel He Shao*, 245 So. 3d 477, 484 (Miss. 2018).

¶26. With this standard in mind, we find the undisputed facts and unambiguous law prevent Harris from recovering from CPA. So CPA was fraudulently joined for purposes of setting venue in Hinds County. *Id.*

## II. Warranty Deed

¶27. The trial judge ruled CPA was a proper defendant. She based this ruling on her "determination that CPA did not sell the property in 1975." This determination was based on two legal errors.

¶28. The first error was deeming the warranty deed invalid because the grantee did not sign it. While the law requires a writing conveying real property to be signed by the *grantor*, Mississippi has never required the grantee to sign. *See Fowlkes v. Lea*, 84 Miss. 509, 36 So.

11

1036, 1037-38 (1904) (holding that a grantee's acceptance of a deed obligates him to pay the consideration for the property conveyed, even though he did not sign the instrument). For example, in 2017, this Court found a letter dissolving a partnership and transferring the partnerships assets, including real property, to be sufficient to convey the real property because the letter had been signed *by the grantor* and delivered to the grantee. ***White v. White (In re Est. of White)***, 234 So. 3d 1210, 1213 (2017) (applying Miss. Code Ann. § 89-1-1 (Rev. 2011)).

¶29.    When it comes to the grantee, *acceptance* by the grantee is what is essential. ***Est. of Green v. Cooley***, 306 So. 3d 665, 670 (Miss. 2020). This acceptance can be evidenced by "words, acts, and circumstances surrounding the deed transaction." ***Id.*** Here, the warranty deed was recorded almost five decades ago. And there is no credible evidence to suggest Community Park Associated, Ltd., never accepted title to the apartment complex. *See Wilkerson v. Goss*, 113 So. 3d 544, 557 (Miss. 2013) (holding that, if "plaintiff wishes to defeat a motion to transfer venue, it follows that he or she should be prepared to present some credible evidence supporting his or her choice of forum").

¶30.    The second legal error was disregarding that CPA was a legally separate and distinct entity from Community Park Associates, Ltd. *See **Johnson & Higgins of Miss., Inc. v. Comm'r of Ins. of Miss.***, 321 So. 2d 281, 284 (Miss. 1975) ("The general rule of law basic to the concept of the corporation is that the distinct corporate identity will be maintained unless to do so would subvert the ends of justice."). In the trial judge's view, the grantor and grantee appeared to be "the same person." But the deed clearly showed that Community Park

12

Apartments, Inc., a corporation, sold the apartment complex to Community Park Associates, Ltd., a partnership. While the names of the grantor and grantee were similar, they were not the same "person" under the law.[9] ***Buchanan v. Ameristar Casino Vicksburg, Inc.***, 957 So. 2d 969, 978 (Miss. 2007).

¶31. Contrary to the trial judge's suggestion, CPA presented evidence at the hearing that *none* of the incorporators for CPA were partners of Community Parks Associates, Ltd. But even if they had been, that does not destroy the legal separateness of the two entities. Mississippi law has long acknowledged that "two or more corporations *are separate and distinct entities* although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers." ***Murdock Acceptance Corp. v. Adcox***, 245 Miss. 151, 163, 138 So. 2d 890, 896 (1962) (emphasis added).

¶32. The certified warranty deed presented to the trial judge clearly showed CPA conveyed the apartment complex to another entity. It did not sell the property to itself. So to rule that CPA did not sell the property in 1975 was clear error. Rather, the undisputed evidence shows that CPA sold the apartment complex in 1975 and ceased to do business—forty-six years before the deadly fire.

---

[9] The same is true for the entity listed on the Pike County tax roll, "Community Park Inc. c/o Alpha Management Corp." The trial judge concluded the tax rolls referred to Community Park Apartments, Inc. (CPA). But the name, while similar, is not the same. So this is not evidence that CPA still owns the apartments. Again, the apartments were sold to "C. Park Inc.," general partner of "Community Park Associates, Ltd." So it is much more reasonable to conclude that the tax roll is referring to C. Park Inc. than CPA.

¶33. This undisputed fact cuts against venue lying in Hinds County against CPA. The trial court relied on information from the Secretary of State that CPA's principal office was in Hinds County. But recently, this Court held that, while "[a] corporation's official filings may be relevant to determining" its principal place of business, these "filings are not conclusive as to venue . . . ." *Lewis*, 335 So. 3d at 1054. Instead, "for venue purposes, the controlling question is 'where the corporation is *actually* doing business." *Id.* (quoting *Bob Milner Rentals, Inc. v. Moon*, 246 Miss. 326, 149 So. 2d 473, 474 (1963)). And, here, CPA had not conducted any actual business since 1975.

¶34. But more than that, this undisputed fact supports Alpha Management's fraudulent-joinder claim, because Harris has no reasonable claims against CPA since it did not own the apartments at the time of the fire. *Blackledge*, 530 So. 2d at 1365 (requiring a "reasonable claim of liability asserted against the defendant upon whom venue is based").

### III. Harris's Claims

¶35. Harris's theory of liability is premises liability—that, as an owner of Community Park Apartments, CPA owed certain duties to its tenants, namely, to keep the premises it owns reasonably safe and to take measures to protect tenants from forseeable danger from fire. *See Doe v. Hallmark Partners, LP*, 227 So. 3d 1052, 1056 n.7 (Miss. 2017) ("Although not the insurer of an invitee's safety, a *premises owner* does have the duty 'to keep the premises reasonably safe . . . .'" (emphasis added) (quoting *Corley v. Evans*, 835 So. 2d 30, 37-38 (Miss. 2003)). Legally, CPA owed no such duty, because it was not the premises owner of Community Park Apartments.

14

¶36. Alternatively, Harris argues that, even if CPA did sell the apartment complex in 1975, it could still be liable for negligent design and construction. As support Harris cites ***Goode v. Castlewood Arms, Inc.***, 339 So. 2d 563, 564 (Miss. 1976), which held that a complaint that alleged the defendant apartment owner "constructed and designed Castlewood Arms apartments, and especially the fire wall between the apartment[s] . . . , in such a way that they were unreasonably dangerous" sufficiently stated a cause of action. Harris also relies on Mississippi Code Section 15-1-41 (Rev. 2019), which exempts wrongful-death actions from the six-year statute of repose[10] for claims based on deficiencies in design and construction of real property.

¶37. The problem with Harris's alternative argument is two-fold.

¶38. First, in contrast to the plaintiff in ***Goode***, Harris's complaint did not allege CPA negligently constructed and designed Community Park Apartments. In fact, she admits on appeal that she did not plead negligent design and construction. But she insists that her claim for "other acts of negligence" was sufficiently broad to cover this claim. We disagree. Even under liberal pleadings standards, the complaint fails to put CPA on notice that it may have to defend negligence claims based on the design and construction of Community Park Apartments. Instead, the complaint was specifically aimed at CPA's purported role as owner, operator, and manager of the apartment complex.

---

[10] Under Section 15-1-41, no negligent design or construction claim can be brought "more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof."

¶39. Second, even if the complaint was sufficiently broad enough to encompass a negligent design and construction claim, Harris runs into the same problem she faces with the premises-liability claim—namely, that CPA had not owned or controlled the apartments for decades.

¶40. Harris's reliance on the wrongful-death exception to Section 15-1-41 is misplaced. Section 15-1-41 is a statute of repose intended "to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements." *W. End Corp. v. Royals*, 450 So. 2d 420, 424 (Miss. 1984). At best, the exemption in Section 15-1-41 enables wrongful-death beneficiaries to still sue architects and builders more than six years after they stopped working on the project. And, here, there was neither any allegation in the complaint nor evidence presented at the hearing that CPA was the architectural firm that designed the complex or the construction company that built it.

¶41. Section 15-1-41 does not address "[p]ersons owning or in possession of property," who in contrast to architects and contractors, "can make changes on the property and remove any danger or hazard . . . ." *Anderson v. Fred Wagner & Roy Anderson, Jr., Inc.*, 402 So. 2d 320, 324 (Miss. 1981). In other words, it is clear the liability Harris seeks to impose on CPA through an unpled negligent design and construction claim is based on CPA's being the owner of the apartment complex when built. But again, CPA's ownership ceased in 1975. After that point, the new owner had ample opportunity to make changes to the apartments, remove possible dangers or hazards, or make the building compliant with federal, state, and local codes. So liability for any purported design or construction defect—had this theory

16

been pled—would fall on the apartment complex owner. And CPA undisputedly is not the apartment complex owner.

¶42. So Harris has no viable alternative claims against CPA, clearly making it an improper defendant that cannot be used to establish venue in Hinds County. *See Stubbs*, 825 So. 2d at 13.

### IV. Entry of Default

¶43. Harris insists it does not matter whether the facts support her claims because of the entry of default against CPA. Because of this entry of default, Harris argues CPA's liability has been conclusively established. But the trial judge rejected this argument. Instead, the trial judge addressed the merits of Harris's allegations regarding CPA. And so do we.

¶44. In making this argument, Harris conflates an entry of default with a default judgment. Rule 55(a) governs entries of default, which are entered by the clerk. Miss. R. Civ. 55(a). Rule 55(b) governs default judgments, which may only be granted by the court. Miss. R. Civ. P. 55(b). And the court may only grant a default judgment after an application, notice to the party against whom the default is sought, and a hearing. Only a default *judgment* is "treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as a judgment rendered after a trial on the merits." Miss. R. Civ. P. 55 advisory comm. n. An entry of default, on the other hand, may be set aside for "good cause shown." Miss. R. Civ. P. 55(c).

¶45. While it is true that, at the time the trial judge ruled on CPA's motion to dismiss and Alpha Management's motion to transfer venue based on fraudulent joinder, the judge had yet

to rule on—and because of the interlocutory appeal has still not ruled on—the motion to set aside the entry of default. But CPA had moved to set aside the entry of default, asserting as good cause both (1) the "unexplained absences in [counsel's] office as a result of Covid-19 quarantines" that led to an untimely answer and (2) a meritorious defense—namely, that CPA does not even own the apartment complex. And this Court has "encouraged our trial courts to vacate default judgments where the defendant has shown that he has a meritorious defense on the merits." *Bailey v. Ga. Cotton Goods Co.*, 543 So. 2d 180, 182 (Miss. 1989). So not only has no default judgment been entered in this case—and thus CPA's liability cannot be deemed conclusive—but also the record undeniably supports CPA's argument that the entry of default *should* be set aside in light of CPA's undisputable meritorious defense.

¶46.    In his separate opinion, Justice Griffis misses the obvious reality that Harris—upon learning that CPA had not owned the property for almost half a century—immediately ran and got an entry of default anyway. She obtained the default even though she knew she had no viable claim against CPA. And she did this solely to keep venue in Hinds County. Justice Griffis insists CPA lacked "standing to contest the actual factual allegations of the plaintiff's claim for relief." Griffis CIPDIP Op. ¶ 59 (quoting Miss. R. Civ. P. 54(a) advisory comm. n.). Curiously, Justice Griffis would have us remand an obviously frivolous claim against CPA to the trial court. He would direct that the bogus claim then be transferred to Pike or Madison County along with the claim against Alpha Management. He would personally take this tact, even though the record conclusively supports that the claim cannot possibly proceed.

18

¶47. We respectfully suggest Justice Griffis misses the big picture and the practical reality that a company that had not owned the property—or even operated for over four decades—would not likely timely answer a lawsuit against it. Further, his view also misses that the advisory committee note to Rule 54(a), if applicable, would have no bearing on *Alpha Management*'s standing to challenge the allegations in the complaint, made solely to deprive Alpha Management of its right to be sued where the apartment complex is located or where its principal place of business is.

¶48. The fact Harris's counsel immediately sought entry of default upon learning CPA had sold the apartments nearly fifty years ago only lends credence to Alpha Management's assertion that Harris named CPA as a defendant solely to establish venue—not to recover damages for negligence. One of the considerations in fraudulent joinder is whether the plaintiff has a good faith, bona fide belief that there is a cause of action against the venue-establishing defendant. *Blackledge*, 530 So. 2d at 1365. Another is whether there is a reasonable claim of liability against the venue-establishing defendant. *Id.* And, here, when told that CPA did not in fact own the apartments and had ceased to conduct business almost half a century ago, Harris's reaction was to request an entry of default to keep the Hinds County defendant in the suit. This is *classic* fraudulent joinder—naming as defendant an entity against which no liability can be imposed nor any recovery obtained just to establish venue.

**Conclusion**

19

¶49. "The right of a citizen to be sued in the county of his residence is a valuable right . . . ." *Trolio*, 133 So. at 208. Here, the undisputed facts and clear law demonstrated that Harris attempted to deprive Alpha Management of that right. It did so by joining CPA as a defendant in this premises-liability case, despite the fact CPA sold the premises in 1975. For this reason, we reverse the ruling of the trial court, which denied Alpha Management's motion to transfer venue. We remand this case to the trial court with instructions to set aside the entry of default against CPA, dismiss CPA as a defendant, and transfer this case—at Harris's election—to either Pike County or Madison County.

¶50. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRIFFIS, J. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COLEMAN, J.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶51. It is no longer the law in Mississippi, and indeed has not been in more than twenty years, that when venue is good as to one defendant, it is good as to all defendants.

¶52. Statutory law alone determines proper venue. "The determination for proper venue is governed by statute." *Miss. Crime Lab. v. Douglas*, 70 So. 3d 196, 202 (¶ 16) (Miss. 2011); *see also Park on Lakeland Drive, Inc. v. Spence*, 941 So. 2d 203, 206 (¶ 8) (Miss. 2006) ("Venue is a function of statute." (internal quotation marks omitted) (quoting *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1155 (Miss. 1992))); *Guice v. Miss. Life Ins. Co.*, 836 So. 2d 756, 759 (¶ 11) (Miss. 2003) ("The venue of a suit in equity in our state is

20

governed entirely by statute." (citing *Green v. Winona Elevator Co.*, 319 So. 2d 224, 226 (Miss. 1975))); *Salts v. Gulf Life Ins. Co.*, 743 So. 2d 371, 373 (¶ 7) (Miss. 1999) ("Venue is therefore a function of statute.").

¶53. Effective January 1, 2003, the Legislature amended the venue statute, Mississippi Code Section 11-11-3, to remove the words that formed the basis of the Court's earlier pronouncement that when venue is good as to one defendant, it is good as to all. *Forrest Gen. Hosp. v. Upton*, 240 So. 3d 410, 411-12 (¶¶ 49-50) (Miss. 2018) (Coleman, J., specially concurring). Although in the decades since, the Court has continued to write that when venue is good as to one defendant, it is good to all defendants, doing so is, without putting too fine a point on it, not our call. It is the Legislature's call, and the Legislature made it in a 2002 special session and when it amended the statute again in 2004. *Id.* at 421 (¶ 49).

¶54. I concur with the majority's result and its reasoning, except as set forth above. Community Park Apartments must be dismissed and venue transferred to Pike County or Madison County as directed by the majority. Such would be the holding whether or not the Court acknowledges the effect of the above-described amendments to the venue statute. However, for the reasons stated above and in my separate *Upton* opinion, it is time for the Court to acknowledge that the 2002 and 2004 amendments to the venue statute have put an end to the good-for-all venue maxim. *See* Maj. Op. ¶ 17.

¶55. I agree with Justice Griffis, for the reasons he gives in his separate opinion, that the majority improperly considers the issue of setting aside the entry of default.

**GRIFFIS, J., JOINS THIS OPINION IN PART.**

21

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

## I.     Entry of Default

¶56.    The motion to set aside entry of default is not properly before this Court. First, the trial court has not ruled on the motion to set aside entry of default. At the hearing, the attorney for Community Park Apartments, Inc. (CPA), stated that the motion to set aside entry of default was filed one day before the scheduled hearing, and the motion to set aside entry of default was *not* noticed to be heard at the February 25, 2022 hearing.

¶57.    Next, neither petition for interlocutory appeal asserted that the entry of default was an issue in this appeal. CPA's petition only asked this Court to consider the "trial court's denial of its motion to dismiss and . . . to stay the trial court proceedings." Likewise, Alpha's petition did not identify the entry of default as an issue.

¶58.    In *Taylor v. Taylor*, this Court held: "[I]t is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *Taylor v. Taylor*, 201 So. 3d 420, 421 (Miss. 2016) (internal quotation marks omitted) (quoting *Adams v. Bd. of Supervisors of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936)). Additionally, in *Long v. Vitkauskas*, this Court found that because Long did not raise the trial court's rulings on Vitkauskas's objections as an issue on appeal, the issue was not properly before the Court. *Long v. Vitkauskas*, 287 So. 3d 171, 178 (Miss. 2019). In support, the *Long* Court relied on *Collins v. City of Newton*, in which this Court found that "[b]ecause the issue was not argued in the Collinses' appellate briefing, we consider it abandoned and waived." *Id.* (internal

quotation marks omitted) (quoting *Collins v. City of Newton*, 240 So. 3d 1211, 1221 (Miss. 2018)).

¶59.    The majority discusses the legal significance of a default judgment:
Only a default *judgment* is "treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as a judgment rendered after a trial on the merits." Miss. R. Civ. P. 55 advisory comm. n. An entry of default, on the other hand, may be set aside for "good cause shown." Miss. R. Civ. P. 55(c).

Maj. Op. ¶ 44.   But the majority omits a similar discussion of legal significance of an entry

of default.   The Advisory Committee Note to Rule 55 states:

> After entry of default by the clerk, *defendant has no further standing to contest the actual factual allegations of the plaintiff's claim for relief.* If a defendant wishes an opportunity to challenge plaintiff's right to recover, a defendant's only recourse is to show good cause for setting aside the default under Rule 55(c) and, failing that, to contest the amount of recovery.

Miss. R. Civ. P. 55 advisory comm. n. (emphasis added).

¶60.    Here, we should not simply ignore the fact that the trial court has not considered or

ruled on the motion to set aside the entry of default.   The trial court has not entered an order

to grant or deny the motion to set aside entry of default.   I do not believe we should address

the entry of default.   If we choose to address the entry of default, however, we must likewise

consider the legal significance of the entry of default, i.e., that until the trial court rules on

this motion, under Rule 55(c), CPA "has no further standing to contest the actual factual

allegations of the plaintiff's claim for relief."   Miss. R. Civ. P. 55 advisory comm. n.

¶61.    This Court's must review cases based on: (a) the motions *actually* made by the parties,

(b) the motions considered and *actually* decided by the trial court, (c) the *actual* orders

entered by the trial court, and (d) the issues that were *actually* raised in the petitions for

interlocutory appeal. Again, "[i]t is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal." *Taylor*, 201 So. 3d at 421 (internal quotation marks omitted) (quoting *Adams*, 170 So. at 685).

¶62. Therefore, I respectfully disagree with and dissent from the majority's decision to "remand this case to the trial court with instructions to set aside the entry of default against CPA[.]" Maj. Op. ¶ 49.

### II. CPA's Motion to Dismiss

¶63. CPA filed a two-page pleading that is titled "Answer and Motion to Dismiss." It only mentions a motion to dismiss in the prayer for relief, in which CPA "prays that this Court will enter an Order upholding Defendant's motion to dismiss." There is nothing more.

¶64. Rule 7(b)(1) of the Mississippi Rules of Civil Procedure provides that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, *shall state with particularity the grounds therefor, and shall set forth the relief or order sought*." Miss. R. Civ. P. 7(b)(1) (emphasis added). CPA did not state with particularity the grounds for the motion to dismiss or set forth the relief or order sought.[11]

¶65. CPA's motion does not state that it filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) or any other rule. At the hearing, CPA's attorney spoke briefly

---

[11] Also, there is no record that CPA provided the trial judge with a memorandum of authorities as required by Rule 4.02(2) of the Uniform Civil Rules of Circuit and County Court Practice. Rule 4.02(2) provides, "In circuit court, a memorandum of authorities in support of any motion to dismiss . . . *shall* be mailed to the judge presiding over the action at the time that the motion is filed." Miss. Uniform Civ. R. Cir. & Cnty. Ct. P. 4.02(2) (emphasis added).

to discuss only[12] the issues related to insufficiency of process (Mississippi Rule of Civil Procedure 12(b)(4)) and insufficiency of service of process (Mississippi Rule of Civil Procedure 12(b)(5)). And, as discussed in detail below, Alpha's "motion to dismiss" did not move the trial court to "dismiss" CPA.

¶66. There is simply no basis to reverse the trial court's decision and to "remand this case to the trial court with instructions to . . . dismiss CPA as a defendant[.]" Maj. Op. ¶ 49. Neither CPA, Alpha, nor the majority even attempt to state the legal grounds or identify any procedural rule or law that supports CPA's dismissal. Therefore, I respectfully dissent from the majority's decision to reverse the trial court's judgment and to "remand this case to the trial court with instructions to . . . dismiss CPA as a defendant[.]" Maj. Op. ¶ 49.

III. *Alpha's Motion to Dismiss, or Alternatively, to Transfer Venue*

¶67. I agree that "[t]he controlling issue in this interlocutory appeal is fraudulent joinder—did the plaintiffs join a defendant [CPA] for the sole purpose of establishing venue in Hinds County?" Maj. Op. ¶ 1. But, this Court's review should start with Alpha's *actual* motion that the trial court considered and the order that denied the motion. Then, this Court should consider existing Mississippi law on fraudulent joinder or improper venue under Mississippi Rules of Civil Procedure 12(b)(3) and 82. Although I agree with the majority that venue should be transferred, I do not agree with the majority that we should set aside

_____

[12] The docket includes a pleading in which CPA noticed for hearing *Alpha's* motion to dismiss for improper venue, insufficiency of process, and insufficiency of service of process.

25

decades of Mississippi law and adopt a United States Court of Appeals for the Fifth Circuit standard with no discussion, explanation, or rationale given.

¶68.    Alpha filed a "*Motion to Dismiss For Improper Venue*, Insufficiency of Process, and Insufficiency of Service of Process; or Alternatively, *To Transfer Venue*." (Emphasis added.) Alpha moved:

> *to dismiss this action for: (1) improper venue pursuant to Miss. R. Civ. P. 12(b)(3) and Miss. Code Ann. § 11-11-3*; (2) insufficiency of process and insufficiency of service of process pursuant to Miss. R. Civ. P. 12(b)(4) -(5), Miss. R. Civ. P. 4(d)(4) and Miss. Code Ann. §13-3-49; or, (3) alternatively, *to transfer this case from Hinds County, Mississippi, to either Pike County or Madison County, Mississippi, pursuant to Miss. R. Civ. P. 82(d) . . . .*

(Emphasis added.)  Alpha's motion expressly stated that it was based on Rules 12(b)(3), 12(b)(4), and 12(b)(5).[13]

¶69.    Despite the fact that Alpha expressly stated that its motion was based on Rule 12(b)(3), the majority is concerned that my opinion "insists we must place a motion to dismiss based on fraudulent joinder *into one of the neat categories* of Rule 12 based on the particular label given by the movant."  Maj. Op. ¶ 19 (emphasis added).  Indeed, I do; Alpha did too, and so did the trial court.[14]

---

[13]  The majority only considers the trial court's decision to deny the motion to transfer venue. The majority reasons that the Court will limit its review to "focus on correcting the clear error of denying CPA's motion to dismiss and Alpha Management's motion to transfer venue based on fraudulent joinder." Maj. Op. ¶ 16 n.6. Since the majority does not address the issues actually raised and argued by Alpha, i.e., insufficiency of process and insufficiency of service of process, neither do I.

[14] Even the majority cites ***Weeks, Inc. v. Lewis***, 335 So. 3d 1049 (Miss. 2022), albeit with little explanation. There, this Court noted that in considering a motion to transfer venue, the trial court must make a "fact-based decision" about where venue is proper, and the ruling is a "discretionary ruling entitled to deferential review." ***Id.*** at 1052 (citing ***Weir v. Mayze***,

¶70.    Under Mississippi law, the appropriate remedy for improper venue is for the court to transfer the case, not to dismiss it.   Mississippi Rule of Civil Procedure 82(d) provides:

> **(d) Improper Venue.** *When an action is filed laying venue in the wrong county, the action shall not be dismissed, but the court, on timely motion, shall transfer the action to the court in which it might properly have been filed and the case shall proceed as though originally filed therein.* The expenses of the transfer shall be borne by the plaintiff. The plaintiff shall have the right to select the court to which the action shall be transferred in the event the action might properly have been filed in more than one court.

Miss. R. Civ. P. 82(d) (emphasis added).  The Court of Appeals added:

> The Mississippi Rules of Civil Procedure make this clear. . . .  And Rule 82(d) provides that "[w]hen an action is filed laying venue in the wrong county, *the action shall not be dismissed,* but the court, *on timely motion, shall transfer the action to the court in which it might properly have been filed.*" . . . *Again, improper venue is a reason to transfer a case, not to dismiss it.*

*Fluker v. State*, 200 So. 3d 1148,1149 (Miss. Ct. App. 2016) (emphasis added) (footnotes omitted).

¶71.    In ***Park on Lakeland Drive, Inc., v. Spence***, this Court ruled:

> [W]hen reviewing a trial court's ruling on a motion to change venue, this Court applies an abuse of discretion standard of review. A trial judge's ruling on such motion "will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case."
>
> The Park asserts that Douglas is not a proper party to this lawsuit and that Spence named Douglas as a defendant solely for the purpose of establishing venue in Hinds County. Because The Park believes that Douglas was fraudulently joined, The Park requests this Court to transfer venue to Rankin County, which, according to The Park, is the only proper county for venue purposes.

---

287 So. 3d 941, 943 (Miss. 2020).  Both ***Weeks*** and ***Weir*** were Rule 12(b)(3) cases.

"Venue is a function of statute." This lawsuit was commenced on June 29, 2004; however, in 2004, the Legislature amended Miss. Code Ann. Section 11-11-3. Despite the 2004 legislative amendment to the statute, the pre-amendment version was applicable to the facts of this case because of the June 2004 filing date. When this lawsuit was commenced, the relevant parts of Mississippi's general venue statute, section 11-11-3 stated, "[c]ivil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant resides or in the county where the alleged act or omission occurred or where the event that caused the injury occurred . . . ." We have previously addressed venue issues in cases involving more than one defendant.

> [W]here venue is good as to one defendant, it is good as to all defendants. This is true where the defendant upon whom venue is based is subsequently dismissed from the suit. In such situations, venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only.

In *New Biloxi Hospital, Inc. v. Frazier*, 245 Miss. 185, 192, 146 So. 2d 882, 884-85 (1962), we outlined a three-prong test in which an action may remain in a county where it was brought.

> Where an action is properly brought in a county in which one of the defendants resides, it may be retained notwithstanding there is a dismissal of the resident defendant, provided the following exists — [1] the action was begun in good faith in the bona fide belief that plaintiff had a cause of action against the resident defendant; [2] the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; and [3] there was a reasonable claim of liability asserted against the resident defendant.

Furthermore, *to determine whether the joinder of a defendant is a result of fraud, the appropriate question to ask is "whether the facts support inclusion of the defendant upon whom venue is based."* The Court is not concerned with whether the plaintiff's attorney had the intent to fraudulently or frivolously establish venue. In fact, the intent of the plaintiff's attorney is irrelevant. Therefore, *in today's case, we must determine whether Spence had a reasonable claim of liability against Douglas, or whether Douglas was in fact fraudulently joined*.

28

*It is necessary to begin with the "well-pleaded allegations of the complaint[,]" and any "other evidence in cognizable form," including affidavits.* In addition, it is well settled in Mississippi that "the plaintiff selects among the permissible venues, and his choice must be sustained unless in the end there is no credible evidence supporting the factual basis for the claim of venue." However, venue is a valuable right to the defendant as well and timely objections to improper venue must be honored.

In the instant case, *Spence failed to assert a reasonable claim of liability against Douglas. Therefore, the third prong of the **Frazier** test has not been satisfied.* That being said, we are constrained to find that venue was never proper in Hinds County and that the trial judge abused his discretion in allowing Spence to conduct discovery. Douglas should have been dismissed following The Park's submission of affidavits detailing the incident and the role, or non-role, that Douglas maintained in this incident. Spence never offered any evidence to support the inclusion of Douglas as a defendant.

Spence's complaint alleges that the Defendants, Martha White, Jeffrey Wilburn, and Shane Douglas were managers at the Ice Park, and in charge of supervision and safety and breached their duties of care causing or proximately contributing to the cause of Plaintiff's injuries and damages. The complaint, nor anything else in the record, sets forth exactly what affirmative act or omission by Douglas created liability on his part.

***Park on Lakeland Drive, Inc., v. Spence***, 941 So. 2d 203, 206-08 (Miss. 2006) (emphasis added) (citations omitted).[15]

¶72.   In ***Spence***, unlike this case, "The Park filed a motion for a transfer of venue and dismissal of Shane Douglas as a fraudulently joined defendant. ***Spence***, 941 So. 2d at 205. The ***Spence*** Court framed the relevant question for fraudulent joinder in venue, however, as follows: "to determine whether the joinder of a defendant is a result of fraud, the

---

[15]   The majority cites ***Blackledge v. Scott***, 530 So. 2d 1363, 1365 (Miss. 1988), to state the ***Frazier*** test. Interestingly, there the Court stated that the "[m]otions of the three insurance companies for dismissal were sustained, and they were dismissed from the action without prejudice. The appellant then filed a motion to transfer the cause to the proper venue." ***Blackledge***, 530 So. 2d at 1364.

appropriate question to ask is 'whether the facts support inclusion of the defendant upon whom venue is based.'" *Id.* at 207 (citing *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1002 (Miss. 2004); *Est. of Jones v. Quinn*, 716 So. 2d 624, 628 (Miss. 1998); *Jefferson v. Magee*, 205 So. 2d 281, 283 (Miss. 1967)).

¶73.    Thus, the question to be decided is whether plaintiffs asserted a reasonable claim of liability against CPA. We look to the third prong of the *Frazier* test. *Spence*, 941 So. 2d at 207-08. Venue is proper in Hinds County only if there is a reasonable claim of liability against CPA.

¶74.    Alpha presented a certified copy of a warranty deed that evidenced that CPA sold the apartment complex many years ago. This was certainly credible evidence that CPA was not the owner of the property at the times relevant to the plaintiffs' claims. Indeed, the warranty deed established that there is "no credible evidence supporting the factual basis for the claim of venue" as to CPA.

¶75.    Despite this evidence, the plaintiffs' "choice of venue *must* be given the benefit of reasonable doubt and '*must* be sustained unless in the end there is no credible evidence supporting the factual basis for the claim of venue.'" *Taylor Constr. Co., Inc. v. Superior Mat Co., Inc.*, 298 So. 3d 956, 958 (Miss. 2020) (quoting *Weir*, 287 So. 3d at 944). The plaintiffs submitted a copy of the Pike County tax roll that listed "Community Park Inc. c/o Alpha Management Corp" as the owner of the property. I agree with the majority's ruling that:

> The trial judge concluded the tax rolls referred to Community Park Apartments, Inc. (CPA). But the name, while similar, is not the same. So this

30

is not evidence that CPA still owns the apartments. Again, the apartments were sold to "C. Park Inc.," general partner of "Community Park Associates, Ltd." So it is much more reasonable to conclude that the tax roll is referring to C. Park Inc. than CPA.

Maj. Op. ¶ 30 n.9. As a result, the majority and I agree that there was no credible evidence to support the factual basis for the claim of venue was proper in Hinds County. Accordingly, I find that the trial court abused its discretion and committed reversible error by denying the motion to transfer venue. I also agree and concur with the majority that this case should be reversed and remanded "to the trial court with instructions to . . . transfer this case—at Harris's election—to either Pike County or Madison County." Maj. Op. ¶ 49.

¶76. This Court's review should end here. The majority has decided, however, that we should instead adopt the Fifth Circuit standard for fraudulent joinder from *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). The majority cites *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 230 (Miss. 2005), which discusses *Carriere*, but it did not adopt *Carriere* or say that Mississippi courts should apply it.

¶77. Instead, the majority asks the question "So how should our courts address the dismissal element of [Alpha's] request?" Maj. Op. ¶ 23. The majority then answered:

> When facing analogous claims of improper joinder of in-state defendants to defeat removal by the diverse defendant to federal court, the Fifth Circuit has directed its trial courts to "employ a summary judgment-like procedure for disposing of these claims." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 230 (Miss. 2005) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)).

Maj. Op. ¶ 23. The majority takes *Harrison* out of out of context. This Court, in *Harrison*, did not adopt the Fifth Circuit standard.

31

¶78. The Court, in **Harrison**, did not consider improper venue or fraudulent joinder in a venue decision. Instead, the issue before this Court was "[w]hether the federal district court's refusal to remand and subsequent dismissal of Chandler-Sampson as an improperly joined party constituted a final adjudication on the merits?" **Harrison**, 891 So. 2d at 228-31. The plaintiffs, the Harrisons, argued that "the federal district court's denial of their motion to remand was not an adjudication on the merits" and based this on Federal Rule of Civil Procedure 41(b). *Id.* at 228-29. The federal district court considered the motion to remand and stated:

> the federal district court was mandated by precedent to employ a summary judgment-like procedure in order to assess the viability and substance of the Harrisons' claims. It determined that the Harrisons' complaint did not state a cause of action against Chandler-Sampson for which Mississippi law could provide a remedy. The federal district court's final analysis recognized that the Harrisons were procedurally barred from raising their only cognizable claim, that being one for negligence. It is clear that the federal district court applied the proper legal standard, gleaned the record for any possibility of recovery, and ultimately determined that the Harrisons had failed to state a claim against Chandler-Sampson upon which relief could be granted. Accordingly, the federal district court judge issued a final adjudication on the merits.

*Id.* at 231. This Court then determined that the trial judge was correct to enter a summary judgment against the Harrisons *based on res judiciata*. *Id.* at 237.

¶79. In **Harrison**, this Court did not adopt the Fifth Circuit standard in **Carriere**, and it did not consider fraudulent or improper joinder in the venue context. **Harrison**, 891 So. 2d at 228-31. Instead, this Court simply noted what the federal district court had done to deny remand and to ultimately determine that the claims were barred by res judicata. *Id.*

¶80. The majority adopts the new Fifth Circuit standard articulated in *Carriere*. No party in this case has argued that Mississippi should adopt *Carriere*. No party even cited *Harrison*. The trial court considered neither *Harrison* nor *Carriere*. Nevertheless, based on the majority's independent research, the majority is prepared to adopt the Fifth Circuit's summary procedure in *Carriere* and change Mississippi law. With no explanation, discussion or reason given, the majority finds "the Fifth Circuit's limited-summary-judgment approach [to be] both sound and readily applicable to motions to transfer venue based on fraudulent joinder." Maj. Op. ¶ 23. I disagree.

¶81. Then, the majority finds that "[w]e review this ruling de novo, as we would any other summary-judgment ruling, viewing the evidence in the light most favorable to the plaintiffs, the nonmovants." Maj. Op. ¶ 25. The majority cites *Hyde v. Martin*, 264 So. 3d 730, 734 (Miss. 2019), which has nothing to do with this case, venue, or fraudulent joinder. In *Hyde*, the author of the majority simply reversed a summary judgment granted to the defendants in a medical malpractice action. *Id.* at 738. No party has filed and the trial court did not consider a Mississippi Rule of Civil Procedure 56(c) summary judgment. There is simply no basis for the majority to change this Court's standard of review in a venue decision from abuse of discretion, as discussed in *Spence*, to de novo, citing *Hyde*.

*IV.    Conclusion*

¶82. For these reasons, I respectfully dissent from the majority's decision to "remand this case to the trial court with instructions to set aside the entry of default against CPA [and] dismiss CPA as a defendant." Maj. Op. ¶ 49. I respectfully concur in part and in result with

the majority's decision to "remand this case to the trial court with instructions to . . . transfer this case—at Harris's election—to either Pike County or Madison County."  Maj. Op. ¶ 49.

**COLEMAN, J., JOINS THIS OPINION IN PART.**